UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WIZARDS OF THE COAST LLC,<br><br>Plaintiff,<br><br>v.<br><br>RYAN JAMES DUNN; THE ADDITIONAL DEFENDANTS IDENTIFIED IN APPENDIX A; AND JOHN DOES NO. 01-15,<br><br>Defendants. | No.<br><br>COMPLAINT<br><br>JURY DEMAND |

Plaintiff Wizards of the Coast LLC ("Wizards"), as and for its complaint against Defendant Ryan Dunn, the other Defendants identified in Appendix A, and John Does No. 01-15, respectfully alleges as follows:

## INTRODUCTION

1. Wizards is the owner and publisher of Magic: The Gathering ("Magic"), the beloved deck-builder that essentially created the multi-billion-dollar trading card game ("TCG") market upon its 1993 launch. It is one of the most venerable and established brands in the collectible card market.

2. Players of a TCG collect distinct cards that have different game rules and effects, compile these cards into decks, and play against opponents. With over thirty thousand different cards printed since 1993, Magic is endlessly adaptable, because players can customize their



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

decks into literally millions of configurations emphasizing different card varieties, combinations, game strategies, and tactics addressing and exploiting certain rules. In the TCG space, Magic offers unparalleled depth, rewarding player skill and creativity and offering unique competitive experiences no matter what sort of deck an opponent might be using.

3. It is in playing Magic that the different elements of the hobby interact: collecting Magic cards helps players increase their options and potentially trade with other players, deckbuilding allows players to approach competition their preferred way, and the game itself allows players to interact with and compete with other players.

4. In the 30-plus years since its launch, Magic has attained global popularity. More than 20 million people worldwide play Magic, building decks from the over 20 billion cards Wizards has printed. Players compete both for fun – in home games and local game shops – and in organized tournaments.

5. Magic's popularity rests on two key pillars. First is game balance. Each new expansion[1] Wizards publishes is designed and tested to ensure that it is compatible with multiple playstyles and strategies, avoiding "broken" combinations that, by virtue of their power, would force players to adopt similar decks and tactics in order to have any chance of winning and thereby eliminate the creativity and diversity of strategy that is the game's hallmark.

6. The second pillar is Magic's aesthetics. Wizards' artists create original, beautiful images, while its writers develop deep and consistent lore for the game: the story of the Magic universe, which is explored in novels and other formats and which guides the content of expansions and creates a stronger connection for Magic fans.

7. Those two pillars have driven and sustained Magic's incredible popularity and financial success and the demand for Wizards' products from both players and collectors.

8. Defendants (collectively, the "PrintMTG Enterprise" or the "Enterprise") operate as a complex and sophisticated network of individuals and shell corporations engaged in trademark infringement, counterfeiting, and criminal copyright infringement on a grand scale.

[1] An expansion is a release of new cards for the game, adding new mixes of abilities and effects to players' arsenals.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

9. A significant portion of that activity involves the production and distribution of counterfeit Magic cards (the "Counterfeit Cards").

10. The acronym "MTG" is a common reference to Magic: The Gathering, therefore "PrintMTG" is an intentional and unsubtle description of Defendants' business, printing counterfeit Magic cards.

11. Defendants call their MTG cards "proxies" to lend them a veneer of legitimacy while actually plying a business built around the sale of Counterfeit Cards. Proxies are substitutes that players use in place of an official card, whether for playtesting or to preserve the condition of the actual card. No element of a proxy card is intended to fool an observer as to its provenance.

12. An honest proxy is a stand-in for a real card that makes no claim to authenticity, by appearance or otherwise. Though proxies are prohibited in all sanctioned Magic events, Wizards recognizes that private and noncommercial proxying is a vehicle players can use to further engage with the game, not to undermine it.

13. A counterfeit is made to be mistaken for the real card and to take its place as something owned, traded, or sold. A counterfeit, simply put, is a fake card intended to pass as legitimate. Defendants are in the counterfeiting business, using the production of proxy cards as a fig leaf.

14. Defendants acknowledge it is a fig leaf, proudly announcing on the ProxyKing.biz website:

> If you opt to print proxy cards through a 3rd party company, you can get a high quality result. However, it takes significantly more effort and time because you have to provide your own print files. Most companies also won't print original art, so they won't look realistic. Again, having a company print proxies for you can be a great way to get a bunch of casual playtesting cards.
>
> Buying proxy cards is ideal if you are looking for high quality, realistic MTG cards. At Proxy King we try to make our proxies as realistic as possible. This lets you join games and play without people noticing you are running proxy cards in your Magic deck.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

15. As this quotation makes clear, Defendants' conduct is brazen and unhidden. They know legitimate printshops won't print original art without a release from the rightsholder. They intend that the people who encounter their product after the sale, including opponents, judges, retailers, and later purchasers, will mistake it for Wizards' genuine product. Indeed, Defendants' websites openly advertise their expertise in making counterfeit Magic cards, forgeries that Defendants trumpet as virtually indistinguishable from Wizards' originals.

16. Those forgeries are intended to (and do) harm every corner of the Magic ecosystem.

17. They directly harm Wizards by displacing sales of genuine cards, damaging retail partners who sell those cards, and undermining trust in the game amongst players, whose love for and participation in Magic depends in part on their faith in its fairness and authenticity.

18. Defendants' forgeries directly harm Wizards' retail partners by damaging trust in and enthusiasm for both the game and the store, which can lead to lower retail sales, and by creating instability and uncertainty in the very secondary markets third-party retailers rely on as a revenue center.

19. They directly harm Magic players by misleading them into paying real-card prices for fake cards, by undermining the stores and the events where they play the game and participate in the Magic community and by increasing the risk in trading and secondary sale and resale.

20. All this harm, even where it impacts the secondary markets in which Wizards does not participate and from which Wizards does not derive direct revenue, flows upwards in part to Wizards. Wizards' profit from Magic comes from the sale of booster packs, decks, and other sealed products. Wizards does not sell individual cards, but nearly every authentic Magic card entered circulation in a sealed Wizards product, and players buy sealed products for the cards inside. A counterfeit supplies the card without the sealed product: a player can obtain a specific card without anyone buying a pack, and counterfeits erode the scarcity and authenticity that make genuine cards, and therefore sealed products, worth buying. When those cards can be



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

bought for a pittance as convincing fakes, it negatively impacts the sales of genuine booster packs. And every lost booster pack sale in favor of a print-on-demand counterfeit damages Wizards.

21. Counterfeit Cards harm the game itself and the ecosystem in which the game thrives, and this harms Wizards.

22. As alleged herein, their creation and sale are both tortious and violate an array of statutes.

23. Indeed, because the PrintMTG Enterprise has willfully infringed thousands of unique Magic cards representing hundreds of Wizards' copyrighted works, Wizards is entitled to up to $28,650,000 in statutory copyright damages alone.

24. Wizards thus brings this action for copyright and trademark infringement, unfair competition, false advertising, violations of the Lanham Act, the Digital Millennium Copyright Act, and the Washington Consumer Protection Act, violations of the Racketeer Influenced and Corrupt Organizations Act, and for civil conspiracy, seeking actual damages in the millions of dollars, statutory damages, and, most importantly, to protect its product and players from this predatory criminal enterprise.

## I. PARTIES

### A. Plaintiff

25. Wizards is a Washington limited liability company with its principal place of business at 1107 Lake Washington Blvd N, Suite 800, Renton, WA 98056.

### B. Defendants

26. The PrintMTG Enterprise is operated from a print shop (the "Print Shop") located at 752 N 2250 W, Ste H, Springville, UT 84663 (the "Print Shop Address"), and by the individuals and entities identified below, who conduct its business through multiple alter-ego print businesses whose dominant purpose is the manufacture and sale of counterfeit goods. Each defendant's role in the Enterprise is summarized below and alleged in further detail in Section IV.D.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**1. The Dunn Defendants**

27. Defendant Ryan James Dunn (“Ryan”)[2] is an individual residing in Utah.

28. Ryan is the founder and principal operator of the Enterprise.

29. He registered its original counterfeit storefront for the sale of Counterfeit Cards, ProxyMTG.com; formed and manages Defendants CK Brands LLC (“CK Brands”) and CK Cards LLC (“CK Cards”); is a member of Defendant MTGApp, a manager of Defendant Black Walnut, and a manager of non-defendant entity Bead Town; and is publicly identified as the founder of CustomStickers, an unregistered DBA for CK Brands.

30. Defendant Melissa Jayne Dunn (“Melissa”) is an individual residing in Utah and is the wife of Defendant Ryan Dunn.

31. Melissa is the sole non-manager member of CK Brands and is identified, with Ryan, as a founder of FastStickers and CustomStickers, both unregistered DBAs for CK Brands.

32. Defendant Tanner Dunn (“Tanner”) is an individual residing at 346 E 2700 S, South Salt Lake, UT 84115.

33. Tanner formed Defendants ProxyParadise and Cardcrafters and non-defendant entity Pokemon Proxy LLC (“PokemonProxy”) and renewed the registration of the Enterprise storefront TrinketKingdom.com in 2023.

34. Defendant Jarrett Dunn (“Jarrett”) is an individual residingin Utah.

35. Jarrett is the registered agent and manager of Defendant JR Cards and a member of Defendant Shelikof Capital LLC (“Shelikof”).

36. On information and belief, based on information provided on Defendants’ websites, Jarrett provides administrative or operational support to the Enterprise as the COO of CustomStickers.

37. Defendant Grace Haroldsen Dunn (“Grace”) is an individual residing in Utah and is the wife of Defendant Jarrett Dunn.

[2] Given the extent to which the Defendants share last names, Wizards identifies individual defendants herein by first name rather than last name.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

38. On information and belief, based on information provided on Defendants' websites, Grace provides administrative or operational support to the Enterprise as the Business Manager at CustomStickers.

39. Defendant Parker Haroldsen ("Parker") is an individual residing in Utah. He is the brother of Defendant Grace Haroldsen Dunn.

40. On information and belief, based on information provided on Defendants' websites, Parker provides administrative or operational support to the Enterprise in his role in Fulfillment at CustomStickers.

41. Defendant Ethan Thomas Dunn ("Ethan") is an individual residing in Utah.

42. On information and belief, based on information provided on Defendants' websites, Ethan provides administrative or operational support to the Enterprise in his role as Production Lead at CustomStickers.

43. Defendant Raili Dunn Lewis ("Raili") is an individual residing, on information and belief, in Utah.

44. On information and belief, Raili, together with Defendants Brynna Higginson and Katelyn Smith, developed the Enterprise's practice of hijacking expired domains as part of her role in New Channel Development at CustomStickers.

45. Defendant Kosner Lewis ("Kosner") is an individual residing in Utah and is the husband of Defendant Raili Dunn Lewis.

46. On information and belief, based on information provided on Defendants' websites, Kosner provides administrative or operational support to the Enterprise in his role as the General Manager at CustomStickers.

47. Defendant Kazdin Lewis ("Kazdin") is an individual residing in Utah and is the brother of Defendant Kosner Lewis.

48. On information and belief, based on information provided on Defendants' websites, Kazdin provides administrative or operational support to the Enterprise in his role in Fulfillment at CustomStickers.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

49. Defendant Colin Pratt Dunn ("Colin") is an individual residing in Utah.

50. Colin is the registered agent for Defendants MTGApp and Black Walnut and non-defendant entity Bead Town and a member or manager of each; on information and belief, he is the "colin" credited as an author on the ProxyKing Website and provides administrative or operational support to the Enterprise in his role as a Software Engineer at CustomStickers.

51. Defendant Christopher Dunn ("Chris") is an individual residing in Utah.

52. Chris is the registered agent and manager of Defendant Shelikof and, with Maren Loflin Dunn, owned the property at 650 E Salem Canal Rd, Salem, UT, 84653 (the "Salem Canal Address") that several entity Defendants gave as their principal place of business.

53. Defendant Maren Loflin Dunn ("Maren") is an individual residing at 655 Lucerne Dr, Salem, UT 84653, and is the wife of Defendant Christopher Dunn.

54. Maren is a member of Defendant Shelikof and provides administrative or operational support to the Enterprise in her role as the Customer Lead at CustomStickers.

55. Christopher and Maren Dunn are the parents of Defendants Ryan Dunn, Tanner Dunn, Colin Pratt Dunn, Ethan Dunn, Jarrett Dunn, and Raili Dunn Lewis.

56. Defendant Joseph Michael Dunn ("Joseph") is an individual who resides at 29 Shady Ln Salem, UT 84653.

57. Joseph is an employee of CustomStickers working in Fulfillment.

58. Chris, Maren, Ryan, Melissa, Tanner, Jarrett, Grace, Parker, Ethan, Raili, Kosner, Kazdin, Colin, and Joseph are collectively referred to herein as the "Dunn Defendants."

**2. The Monsen Defendants**

59. Defendant Michael Cresswell Monsen ("Michael") is an individual who resides ain Utah.

60. Michael provides administrative or operational support to the Enterprise in his role as the Director of Production at CustomStickers.

61. Defendant Daniel Monsen ("Daniel") is an individual who resides in Utah.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

62. Daniel provides operational or administrative support to the Enterprise via his role in Fulfillment at CustomStickers.

63. Defendant Keltsie Rencher ("Keltsie") is an individual who resides in Utah and is Defendant Daniel Monsen's wife.

64. Keltsie provides administrative or operational support to the Enterprise via her role as a Shipping Assistant at CustomStickers.

65. Defendant Karen Cresswell Monsen ("Karen") is an individual who resides in Utah and is the mother of Defendants Michael Monsen and Daniel Monsen.

66. Karen provides administrative or operational support to the Enterprise in her role in Customer Service at CustomStickers.

67. Defendant John Doe #01 a/k/a "John Monsen" is an individual who, on information and belief, resides in Utah.

68. "John Monsen" is identified in press releases as the Chief Operating Officer of YouStickers and, on information and belief, runs the websites CultureofGaming.com and PrintReviewer.com.

69. Upon information and belief, "John Monsen" is an alias of Ryan Dunn.

70. Michael, Daniel, Keltsie, and Karen, and, to the extent that "John Monsen" is not an alias for another Defendant, John Monsen, are collectively referred to herein as the "Monsen Defendants."

**3. Production Defendants**

71. On information and belief, each of the following Defendants works or worked in the Enterprise's production operations at the Print Shop, printing, finishing, or assisting others in printing or finishing the Counterfeit Cards and the Enterprise's other products.

72. Defendant Cody Chamberlain ("Cody") is an individual who resides in Utah.

73. Cody provides administrative or operational support to the Enterprise through his operation of the Etsy shop "ProxyStudiosUSA" and his operation of the Counterfeit Card storefront at PokemonProxy.Co.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

74. Defendant Perry Doe (Doe #02) ("Perry") is an individual whose full name and location are unknown.

75. Perry provides administrative or operational support to the Enterprise in his role in Production at CustomStickers.

76. Defendant Daxton Matthew Macey ("Daxton") is an individual who resides in Utah.

77. Daxton provides administrative or operational support to the Enterprise in his role in Production and Design at CustomStickers.

**4. Designer Defendants**

78. On information and belief, each of the following Defendants procures, creates, or created designs and digital files, or assisted others in the procurement or creation of the designs and digital files, used in the Enterprise's products, including the Counterfeit Cards.

79. Defendant Zoe Doe (Doe #03) ("Zoe") is an individual whose full name and location are unknown.

80. Zoe provides administrative or operational support to the Enterprise in her role as Design Lead at CustomStickers.

81. Defendant Brynna Higginson ("Brynna") is an individual who resides in Provo, UT.

82. Brynna provides administrative or operational support to the Enterprise in her role as Design Manager at CustomStickers.

83. Defendant Alie Mueller ("Alie") is an individual whose location is unknown.

84. Alie provides administrative or operational support to the Enterprise in her role as a Senior Graphic Designer at CustomStickers.

85. Defendant Garrett Lyon ("Garrett") is an individual whose location is unknown.

86. Garrett provides administrative or operational support to the Enterprise in his role in Graphic Design at CustomStickers.

87. Defendant Maxwell Mangum ("Maxwell") is an individual who resides ain Utah.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

88. Maxwell provides administrative or operational support to the Enterprise in his role in Graphic Design at CustomStickers.

89. Defendant Kosuke Doe (Doe #04) ("Kosuke") is an individual whose full name and location are unknown.

90. Kosuke provides administrative or operational support to the Enterprise in his role in Graphic Design at CustomStickers.

91. Defendant Elle Porter ("Elle") is an individual whose location is unknown.

92. Elle provides administrative or operational support to the Enterprise in her role in Fulfillment at CustomStickers.

93. Defendant Kenzi Fish ("Kenzi") is an individual whose location is unknown.

94. Kenzi provides administrative or operational support to the Enterprise in her role in Graphic Design and Fulfillment at CustomStickers.

**5. Fulfillment Defendants**

95. On information and belief, each of the following Defendants packs and ships the Enterprise's orders, including orders for Counterfeit Cards.

96. Defendant Rob Doe (Doe #05) ("Rob") is an individual whose full name and location are unknown.

97. Rob provides administrative or operational support to the Enterprise in his role as the Shipping Lead at CustomStickers.

98. Defendant Jessica Doe (Doe #06) ("Jessica") is an individual whose full name and location are unknown.

99. Jessica provides administrative or operational support to the Enterprise in her role running CustomStickers' Etsy shop.

100. Defendant Jacqueline Doe (Doe #07) ("Jacqueline") is an individual whose full name and location are unknown.

101. Jacqueline provides administrative or operational support to the Enterprise in her role as the Fulfillment Manager at CustomStickers.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

102. Defendant Adam Weinert ("Adam") is an individual believed to reside in Utah.

103. Adam provides administrative or operational support to the Enterprise in his role in Shipping and Fulfillment at CustomStickers.

104. Defendant Rylan Doe (Doe #08) ("Rylan") is an individual whose true name and location are unknown.

105. Rylan provides administrative or operational support to the Enterprise in his role in Fulfillment at CustomStickers.

106. Defendant Sita Doe (Doe #09) ("Sita") is an individual whose true name and location are unknown.

107. Sita provides administrative or operational support to the Enterprise in her role in Fulfillment at CustomStickers.

108. Defendant Joseph Doe (Doe #10) ("Joseph Doe") is an individual whose true name and location are unknown.

109. Joseph Doe (Doe #10) provides administrative or operational support to the Enterprise in his role in Fulfillment at CustomStickers.

110. Defendant Anthony Johnson ("Anthony") is an individual who resides in Utah.

111. Anthony provides administrative or operational support to the Enterprise in his role in the Warehouse at CustomStickers, and through his operation of the counterfeit LEGO minifig business at Minifigs.biz.

112. Defendant Arletta Esqueda ("Arletta") is an individual whose location is unknown.

113. Arletta provides administrative or operational support to the Enterprise in her role as a Warehouse Associate at CustomStickers.

**6. Professional Services Defendants**

114. On information and belief, each of the following Defendants provides accounting, analytics, software, or other professional services to the Enterprise.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

115. Defendant Amber Doe (Doe #11) ("Amber") is an individual whose full name and location are unknown.

116. Amber provides administrative or operational support to the Enterprise in her role in Administration at CustomStickers.

117. Defendant Braxton Batty ("Braxton") is an individual who resides at 1207 Firefly Dr, Spanish Fork, UT 84660.

118. Braxton provides administrative or operational support to the Enterprise in his role as a CPA at CustomStickers.

119. Defendant C. Dennis Allen ("Dennis") is an individual whose location is unknown.

120. Dennis provides administrative or operational support to the Enterprise in his role as a Senior Business Analyst at CustomStickers.

121. Defendant Brandon Doe (Doe #12) ("Brandon") is an individual whose full name and location are unknown.

122. On information and belief, based on information provided on Defendants' websites, Brandon provides operational support to the Enterprise via his role in Statistical Analysis at CustomStickers.

**7. Marketing Defendants**

123. On information and belief, each of the following Defendants creates or publishes marketing content for the Enterprise, including content on the Company-Controlled Review Websites.

124. Defendant Charlee Galbraith ("Charlee") is an individual whose location is unknown.

125. On information and belief, based on information provided on Defendants' websites, Charlee provides administrative or operational support to the Enterprise by running the content and SEO playbook at CustomStickers.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

126. Defendant Katelyn Smith (“Katelyn”) is an individual whose location is unknown.

127. On information and belief, based on information provided on Defendants’ websites, Katelyn provides administrative or operational support to the Enterprise in her role as a Marketing Specialist at CustomStickers.

128. Defendant Andy Doe (Doe #13) (“Andy”) is an individual whose full name and location are unknown.

129. On information and belief, based on information provided on Defendants’ websites, Andy provides administrative or operational support to the Enterprise in his role overseeing marketing and automation at CustomStickers.

130. Defendant Cultural-Row23 is an individual who operates the online handle “Cultural-Row23” on the Reddit platform, whose true name and location are unknown.

131. On information and belief, the operator of the Cultural-Row23 account is an Enterprise member and operates the account for the benefit of the Enterprise.

132. Defendant Tom Doe (Doe #14) (“Tom”) is an individual whose full name and location are unknown.

133. On information and belief, based on information provided on Defendants’ websites, Tom provides administrative and operational support to the Enterprise as the purported “Sticker Inventor” at CustomStickers.com.

134. Defendant Kit Doe (Doe #15) is the person or persons who publish reviews and articles under the pseudonym “Kit Yarrow,” including on KrakenOpus.com, the ProxyKing Website, KitYarrow.com, and potentially other sites.

135. On information and belief, “Kit Yarrow” is a fictitious persona operated by one or more other Defendants, named or unnamed.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**8. Entity Defendants**

136. Defendant CK Brands LLC ("CK Brands") is a Utah limited liability company bearing Entity No. 12411503-0160 with a formation date of July 28, 2021, and a principal place of business at the Print Shop Address.

137. Defendant Ryan Dunn is the registered agent and manager for CK Brands. Defendant Melissa Dunn is the sole non-manager member of CK Brands.

138. CK Brands is the tenant of the Print Shop Address and the identified merchant for purchases made through the ProxyKing Website.

139. CK Brands also operates an Etsy shop at https://www.etsy.com/shop/CKBrandsCo.

140. Defendant CK Cards LLC ("CK Cards") is a Utah limited liability company bearing Entity No. 12585936-0160 with a formation date of November 29, 2021, and a principal place of business at the Salem Canal Address.

141. Defendant Ryan Dunn is the registered agent and manager for CK Cards.

142. There are no non-manager members.

143. On information and belief, the Enterprise previously transacted business through CK Cards.

144. Defendant JR Cards LLC ("JR Cards") is a Utah limited liability company bearing Entity No. 13370862-0160 with a formation date of April 24, 2023, and a principal place of business at 659 N 380 W, Vineyard, UT, 84059.

145. Defendant Jarrett Dunn is the registered agent and manager for JR Cards.

146. There are no non-manager members.

147. On information and belief, the Enterprise previously transacted business through JR Cards.

148. Defendant Proxy Paradise LLC ("ProxyParadise") is a Utah limited liability company bearing Entity No. 12462190-0160 with a formation date of September 1, 2021, and a principal place of business at 308 W. North Temple, Apt #550, Salt Lake City, UT, 84103.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

149. The Registered Agent for ProxyParadise is Defendant Tanner Dunn, who is also the sole member of ProxyParadise.

150. On information and belief, the Enterprise previously transacted business through ProxyParadise.

151. Defendant Cardcrafters Proxy LLC ("Cardcrafters") is a Utah limited liability company bearing Entity No. 13793451-0160 with a formation date of January 1, 2024, and a principal place of business at 2565 S 500 E, Salt Lake City, UT, 84106.

152. Defendant Tanner Dunn is the Registered Agent for Cardcrafters and is also its sole member.

153. On information and belief, that address is owned by Defendant Colin Dunn, and the Enterprise previously transacted business through Cardcrafters.

154. Defendant MTG APP, LLC ("MTGApp") is a Utah limited liability company bearing Entity No. 13279150-0160 with a formation date of February 24, 2023, and a principal place of business of 1487 N 150 E, Springville, UT, 84663.

155. Defendant Colin Dunn is the registered agent for MTGApp.

156. The members of MTGApp are Defendants Colin Dunn and Ryan Dunn.

157. On information and belief, that address is owned by Defendant Black Walnut and is the residence of Defendant Adam Weinert.

158. Defendant Black Walnut Properties LLC ("Black Walnut") is a Utah limited liability company bearing Entity No. 8397859-0160 with a formation date of August 2, 2012, and a principal place of business at 411 Wood Stream Rd, American Fork, UT, 84003.

159. Defendant Colin Dunn is the registered agent for Black Walnut.

160. The managers of Black Walnut are Defendants Colin Dunn and Ryan Dunn.

161. There are no non-manager members.

162. On information and belief, Black Walnut holds real property used by the Enterprise and its members, including 1487 N 150 E, Springville, UT 84663.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

163. Defendant Shelikof Capital LLC ("Shelikof") is a Utah limited liability company bearing Entity No. 10763858-0160 with a formation date of March 22, 2018, and a principal place of business at the Salem Canal Address.

164. Defendant Christopher Dunn is the registered agent and manager of Shelikof.

165. The non-manager members of Shelikof are Defendants Ryan Dunn, Colin Dunn, Jarrett Dunn, Ethan Dunn, Tanner Dunn, Maren Dunn, and non-parties Tamsen Dunn and Caitlin Dunn Petty.

166. On information and belief, Shelikof is used to record and distribute the Dunn Defendants' share of the Enterprise's revenue.

167. Each of these Entity Defendants owns and operates a part of the Enterprise, whether it is providing material support, funding, or an instrumentality through which to launder the profits of the Enterprise.

168. Each of the Entity Defendants has committed at least one predicate act, as more fully described below.

169. Each member of the Entity Defendants is a part of the Enterprise for liability purposes.

## II. JURISDICTION AND VENUE

170. The Court has subject matter jurisdiction over Wizards' copyright claims, Digital Millennium Copyright Act claim under 17 U.S.C. § 1202, RICO claims, Lanham Act claim for trademark counterfeiting and trademark infringement, and Lanham Act claims for false designation of origin, pursuant to 15 U.S.C. § 1121, 18 U.S.C. § 1964(c), and 28 U.S.C. §§ 1331 and 1338(a) and (b).

171. The Court has subject matter jurisdiction over Wizards' civil conspiracy claim and Wizards' claims for violation of the Washington Consumer Protection Act, pursuant to 28 U.S.C. § 1367, because those claims arise from the same nucleus of operative fact as Wizards' federal claims.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

172. The Court has personal jurisdiction over Defendants because they transacted business and committed tortious acts within and directed to the State of Washington, and Wizards' claims arise from those activities.

173. Defendants sold products bearing counterfeit versions of the Wizards Trademarks and which otherwise infringed Wizards' intellectual property to purchasers in Washington through interactive Storefronts that accept Washington shipping addresses and payment in the regular course of business, including purchases shipped to addresses in this District, knowing that Wizards, the owner of those rights, has its principal place of business in Washington.

174. Additionally, Defendants shipped products bearing counterfeit versions of the Wizards Trademarks to consumers in Washington.

175. The Enterprise committed, or facilitated the commission of, tortious acts in Washington and has wrongfully caused Wizards substantial injury in Washington.

176. Additionally, this Court has personal jurisdiction over all Defendants pursuant to RCW 4.28.185, the Washington Long-Arm Statute, because the Defendants committed tortious acts that caused Wizards injury in the State of Washington, and, as to Wizards' RICO claims, pursuant to 18 U.S.C. § 1965(b) and (d).

177. Venue is proper under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, including Defendants' sale and shipment of counterfeit products to purchasers in this district, and under 28 U.S.C. § 1400(a) as to Wizards' copyright claims and 18 U.S.C. § 1965(a) as to Wizards' RICO claims.

178. Pursuant to Local Civil Rule 3(e), intra-district assignment to the Seattle Division is proper because the claims arose in this Division, where (a) Wizards resides, (b) injuries giving rise to the suit occurred, and (c) Defendants directed their unlawful conduct.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## III. BACKGROUND

### A. Magic: The Gathering

179. As alleged above, Wizards is the owner, rightsholder, and creator of Magic, a collectible trading card game that has sold billions of cards and amassed tens of millions of players since its inception in 1993.

180. Magic is a game in which players assume the role of wizard-like "Planeswalkers" and duel one another using magical spells.

181. Everything a player needs to play the game takes the form of a card. In a nutshell, Magic cards represent spells cast or creatures summoned by players and lands that players "tap" for their power or "mana."

182. Magic cards are collectible, have varying rarities, and have varying uses, making them sought-after by players who will trade with one another and who may buy or sell cards in a secondary market to acquire the cards they want, which is what defines Magic as a *trading card game*.

183. From the outset, Magic was designed to evoke the feel of collecting sports cards. When a player opens a booster pack of Magic cards, just like a pack of baseball cards, the player knows the kinds of cards the pack may contain but not the specific cards inside. Thus the experience incorporates the sense of surprise and potential discovery of seeing a desirable card or one that the player had been searching for.

184. Magic is the most holistically successful trading card game of all time, holding the Guinness World Record for Most Played Trading Card Game.

185. Players play Magic at levels that range from casual play on their humble kitchen tables to competing for millions of dollars at the Pro Tour, hosted at some of the largest event venues in the world.

186. Magic boasts versatile and numerous options to play, from the successful Commander format to the modern iterations of the original rules written at its release.

187. Players primarily obtain physical cards one of two ways.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

188. First, they buy sealed products manufactured by Wizards and generally sold through distribution channels like local game stores, online stores, or directly to the consumer.

189. Sealed products are the only way that Wizards distributes most Magic cards into circulation, and almost all authentic Magic cards in circulation were first distributed in a sealed product.

190. Players purchase sealed products to accumulate cards, either to collect the cards themselves or to trade with others to put together their preferred competitive deck.

191. These sealed products generally take the form of, but are not limited to, packs, preconstructed decks, bundles, and direct-to-consumer ("DTC") card drops.

192. The vast majority of sealed products contain a random assortment of cards with predetermined rarities, e.g., a "booster pack" contains fourteen playable cards, of which at least one card is of rare (or greater) rarity, at least three of uncommon rarity, and at least six of common rarity, all from the same "set," or themed print run.

193. Although Wizards may reprint cards from older sets into newer sets, each print run is limited in time and quantity, meaning that the quantity of each desirable card is also limited, and a player's opportunity to collect a new card from sealed product may be limited to the period of time they can locate products from that print run.

194. Players can also obtain individually desired cards, known as "singles", through second- and third-party sources, though not from Wizards.

195. For many players, the collecting game, or searching out and finding the cards they want to collect or add to a deck, is the real draw.

196. For Wizards, protecting the collecting game is a pillar of the long-term popularity and success of Magic, and therefore vital to Wizards' continued commercial success.

197. Like "real" wizards searching the world to collect spells, players complete their decks by trading directly with other players, purchasing cards from other players, or purchasing cards through the secondary market from resellers.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

198. Secondary market sellers run the gamut from local game stores, to resellers on large online card marketplaces such as TCGplayer.

199. At its core, Magic is a social game, in which players interact with one another as they play, compete, collect, and trade cards.

200. Each part of that community, from players and collectors, to local game stores and authentic resellers, is vital to the health of Magic.

201. Collectors purchase cards both from Wizards' chain of distribution and from the secondary market, and their confidence that the cards they acquire are genuine underpins their valuation of those cards.

202. Players seek the cards they need to field their preferred deck both by opening sealed product and by buying and trading singles.

203. Local game stores, which purchase sealed product through Wizards' authorized distribution channels, draw customers and fortify their presence in the local gaming community by selling sealed product and singles and by hosting in-store play. In-store play can take the form of both casual unstructured play and more formal tournaments.

204. Although Wizards does not earn or seek revenue from secondary-market transactions, the popularity of Magic among players and collectors is dependent on their confidence that the genuine cards they open and collect can be kept, traded, or sold at a value that is consistent with their genuine rarity and popularity.

205. Counterfeit Cards undermine the perceived value of cards to players, damage the confidence of collectors that their collections will retain value, and harm each part of the Magic community.

**B. Proxies and Counterfeits**

206. In casual (amateur, non-competitive) play, some Magic players use informal placeholders, sometimes called "proxies," to stand in for cards they own but do not want to damage, or for cards they are testing.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

207. Common examples include writing the name of a card in marker on a basic land card or on a blank card printed for this purpose, using one genuine card to represent another, or sliding a slip of notebook paper into a card sleeve.

208. Such placeholders do not reproduce Wizards' artwork, trademarks, card frames, card backs, or other protected expression, and no one would mistake them for genuine Magic cards.

209. Sanctioned events, like tournaments, permit proxies only in narrow circumstances, such as when a tournament official issues a proxy to replace a genuine card damaged during the event.

210. Defendants' products, in contrast, reproduce genuine Magic cards in their entirety, from the copyrighted artwork and text, trademarked text and logos, card frames and card backs, and in many cases Wizards' anticounterfeiting features.

211. Anything at all might be called a proxy, but proxies need not and should not faithfully replicate authentic Magic cards.

212. Whether called a proxy or otherwise, a counterfeit is a counterfeit, and it serves as an unauthorized market substitute for the genuine card it copies.

213. No placeholder should be capable of passing as an authentic Magic card; despite this, Defendants are aware of and advertise that their counterfeits perfectly replicate genuine cards.

214. Defendants nonetheless call their counterfeits "proxies," though in fact the items produced by Defendants are counterfeits.

**C. The Competitive and Professional Magic Scene**

215. Magic is played worldwide and is widely considered the gold standard for physical trading card games.

216. Magic has a massive, entrenched global presence based on social, in-person, highly accessible play at local game stores and a structured, prestigious professional circuit.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

217. Play at the professional level has been ongoing since at least 1996 with the first Magic Pro Tour and continues to grow.

218. As of 2026, the Magic professional circuit has undergone multiple evolutions, with advancement in professional play usually consisting of high performance across multiple regional qualifiers and regional championships to qualify for the highest level of competition.

219. Competitive Magic play is overseen by the Wizards Play Network, or “WPN,” which is a sanctioning body for competitive play controlled by Wizards.

220. The WPN coordinates a global community of local game stores to support Magic retail and competitive play from beginner to professional levels.

221. The WPN provides training and certification of Magic tournament judges and local game store staff to, among other things, administer tournament rulings and to identify authentic cards and counterfeits.

222. At the local level, game stores across the world host weekly or nightly events for fans to come together and play tournaments for rewards like unopened Magic card packs.

223. Players trade unopened packs and individual Magic cards with each other to acquire cards for gameplay use (both for casual and competitive play). Players also purchase unopened (sealed) Magic cards from retailers authorized by Wizards in order to fill out competitive decks.

224. Players purchase opened Magic cards from each other or from secondary market sources for the same reason.

225. The authenticity of Magic cards is important at all levels of play, from casual kitchen table matches to the highest tier of professional events.

226. Only the use of authentic Magic cards is allowed in official Wizards play - casual or competitive.

227. If a player uses a counterfeit Magic card in their deck, whether at the Pro Tour or local game store, they may be disqualified.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

228. A player may be disqualified whether the player intentionally uses a Counterfeit Card or unknowingly uses a Counterfeit Card that was passed off by another player or by a card seller.

229. One of the joys of collecting Magic cards lies in the journey from a new collector to a seasoned player with a robust and powerful collection.

230. The prevalence of counterfeit Magic cards can shatter the joy of collecting.

231. When a new collector encounters a counterfeit Magic card on sale, the counterfeit devalues the genuine article.

232. When a new player is hoodwinked by a counterfeit Magic card trader or seller, the counterfeit devalues their experience and diminishes the joy they can derive from the game.

233. When a player is caught cheating by using Counterfeit Cards in competitive play, the abuse devalues the experience of every player who has previously encountered the cheating player.

234. When a player unintentionally cheats by using a counterfeit that was foisted on them without their knowledge, they are still subject to disqualification, and the tournament experience is devalued for every person involved except the counterfeiter.

235. Counterfeit Cards in circulation create a drag on the commercial success of the Magic brand.

236. When a player draws a valuable card from an authentic Magic pack, Counterfeit Cards in circulation undermine that player’s ability to trade or sell their authentic card.

237. When a player trades with other players, Counterfeit Cards in circulation undermine everyone’s trust that the target of their trade is an authentic card.

238. Counterfeit Cards in circulation generally undermine the value to players of collecting, trading, and playing Magic.

239. By undermining the value of collecting, trading, and playing Magic, Counterfeit Cards in circulation diminish the value of Magic as a brand and diminish demand for Magic products.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**D. Wizards' Intellectual Property Rights in the Magic Franchise**

240. Wizards is the owner of all rights, title, and interest in the trademarks associated with the Magic franchise, including but not limited to WIZARDS OF THE COAST, WIZARDS OF THE COAST (& design), MAGIC THE GATHERING, MAGIC THE GATHERING (& design), and MAGIC (& design).

241. Wizards is also the owner of all rights, title, and interest in numerous additional registered trademarks that appear prominently on the *Magic cards and on Magic* product packaging, including but not limited to logos associated with the five mana symbols, each one of five mana symbols (white, blue, black, red, green), the Planeswalker symbol, and others, as listed in the table below, with trademark certificates attached hereto as Exhibits 1-29 (collectively with the trademarks identified in the preceding paragraph, the "Wizards Trademarks").

| Ex | Wordmark or Image | Type | Registration No. | Registration Date | Class |
|---|---|---|---|---|---|
| 1 | WIZARDS OF THE COAST | Word Mark | 1779746 | 1993-06-29 | 28 |
| 2 | WIZARDS OF THE COAST | Word Mark | 2130886 | 1998-01-20 | 41 |
| 3 | | Combined | 3188554 | 2006-12-26 | 16 |
| 4 | | Combined | 3188555 | 2006-12-26 | 28 |
| 5 | | Combined | 6630565 | 2022-01-25 | 9 |
| 6 | | Combined | 6630566 | 2022-01-25 | 16 |
| 7 | | Combined | 6630567 | 2022-01-25 | 28 |



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

| Ex | Wordmark or Image | Type | Registration No. | Registration Date | Class |
|---|---|---|---|---|---|
| 8 | WIZARDS OF THE COAST | Combined | 7075959 | 2023-06-06 | 41 |
| 9 | | Figurative Mark | 1969759 | 1996-04-23 | 16; 28 |
| 10 | MAGIC THE GATHERING | Word Mark | 1919923 | 1995-09-19 | 28 |
| 11 | MAGIC THE GATHERING | Word Mark | 2834808 | 2004-04-20 | 41 |
| 12 | MAGIC THE GATHERING | Word Mark | 4372679 | 2013-07-23 | 9 |
| 13 | MAGIC THE GATHERING | Word Mark | 4383290 | 2013-08-13 | 41 |
| 14 | MAGIC THE GATHERING | Word Mark | 5045728 | 2016-09-20 | 28 |
| 15 | MAGIC THE GATHERING | Word Mark | 5191296 | 2017-04-25 | 28 |
| 16 | MAGIC THE GATHERING | Combined | 5675300 | 2019-02-12 | 28 |
| 17 | MAGIC THE GATHERING | Combined | 5675348 | 2019-02-12 | 41 |
| 18 | MAGIC | Combined | 6019842 | 2020-03-24 | 28 |
| 19 | MAGIC | Combined | 6031091 | 2020-04-07 | 41 |
| 20 | MAGIC | Combined | 6411744 | 2021-07-06 | 41 |
| 21 | | Figurative | 5317915 | 2017-10-24 | 9 |
| 22 | | Figurative | 5643885 | 2019-01-01 | 28 |
| 23 | | Figurative | 5546136 | 2018-08-21 | 41 |
| 24 | | Combined | 5466075 | 2018-05-08 | 28 |
| 25 | | Figurative | 4698054 | 2015-03-10 | 28 |



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

| Ex | Wordmark or Image | Type | Registration No. | Registration Date | Class |
|---|---|---|---|---|---|
| 26 | | Figurative | 4447983 | 2013-12-10 | 28 |
| 27 | | Figurative | 4447982 | 2013-12-10 | 28 |
| 28 | | Figurative | 4447981 | 2013-12-10 | 28 |
| 29 | | Figurative | 4447980 | 2013-12-10 | 28 |

242. Wizards is the owner of all rights, title, and interest in the copyrights in Magic in its more than three decades of regular releases and is the sole owner of specific rights (e.g., the card frames, game text, Wizards-commissioned artwork, etc.) in the cross-licensed *Magic* "Universes Beyond" products.

243. The fully owned Magic releases include, but are not limited to, the "Core" sets and the "Expansion" sets. Additional Magic releases include dozens of products and product families. These include, but are not limited to, "Introductory" sets for new players, "Masters" and "Masterpiece" series for collectors, a variety of multiplayer releases including "Commander" and "Conspiracy" sets for multiplayer game enthusiasts, color-themed or character-themed sets, and an extensive catalog of "Secret Lair" limited releases. Wizards also contracts with owners of other popular properties to publish crossover sets called "Universes Beyond."

244. Most Magic cards that have been published fall into the large Core and Expansion sets, and the Core and Expansion sets from which Wizards has identified infringing counterfeits published by the Enterprise are listed below.

245. Individual releases of Magic cards are referred to herein by an informal title reflecting their brief names rather than their complete title as registered with the Copyright Office, e.g., "Magic: The Gathering: Conflux," will be referred to as "Conflux," and so on, for the sake of consistency (where Wizards' naming convention with the Office changed over the



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

decades) and for the sake of brevity. The list of informal titles, titles as reflected in the Copyright Office records, and registration information is captured in the attached Exhibit 30.

246. The infringed Core Sets include, but are not limited to: Limited Edition Alpha, Limited Edition Beta, Unlimited Edition, Revised Edition, Fourth Edition, Fifth Edition, Classic Sixth Edition, Seventh Edition, Eighth Edition, Ninth Edition, Tenth Edition, Magic 2010, Magic 2011, Magic 2012, Magic 2013, Magic 2014, Magic 2015, Magic Origins, Core Set 2020, and Core Set 2021. All of these titles are registered with the Copyright Office except for Limited Edition Beta, Unlimited Edition, Revised Edition, and Classic Sixth Edition. Those four titles reproduce the artwork, frames, and text of the preceding registered releases, and Wizards' claims as to cards from those four titles are based on the registrations of those preceding releases. Wizards asserts claims as to cards from those four titles only to the extent the cards reproduce material contained in the preceding registered releases. Each work for which Wizards claims infringement in this action is covered by a copyright registration identified in Exhibits 30 through 34. All these registered titles were effectively registered prepublication or within the three-month grace period of first publication under 17 U.S.C. § 412 except for Limited Edition Alpha, Fourth Edition, Ninth Edition, and Magic 2014, each of which was registered before Defendants' infringement commenced.

247. On information and belief, Defendants infringed at least one card within every Core Set listed above.

248. The infringed Expansion Sets include, but are not limited to: Arabian Nights, Antiquities, Legends, The Dark, Fallen Empires, Ice Age, Homelands, Alliances, Mirage, Visions, Weatherlight, Tempest, Stronghold, Exodus, Urza's Saga, Urza's Legacy, Urza's Destiny, Mercadian Masques, Prophecy, Planeshift, Odyssey, Onslaught, Legions, Scourge, Mirrodin, Darksteel, Fifth Dawn, Champions of Kamigawa, Betrayers of Kamigawa, Saviors of Kamigawa, Ravnica: City of Guilds, Guildpact, Dissension, Coldsnap, Time Spiral, Planar Chaos, Future Sight, Lorwyn, Morningtide, Shadowmoor, Eventide, Shards of Alara, Conflux, Alara Reborn, Zendikar, Worldwake, Rise of the Eldrazi, Scars of Mirrodin, New Phyrexia,



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Innistrad, Dark Ascension, Avacyn Restored, Return to Ravnica, Gatecrash, Dragon's Maze, Theros, Born of the Gods, Journey into Nyx, Khans of Tarkir, Fate Reforged, Dragons of Tarkir, Battle for Zendikar, Oath of the Gatewatch, Shadows over Innistrad, Eldritch Moon, Aether Revolt, Amonkhet, Hour of Devastation, Ixalan, Rivals of Ixalan, Ravnica Allegiance, War of the Spark, Throne of Eldraine, Theros Beyond Death, Ikoria: Lair of Behemoths, Zendikar Rising, Kaldheim, Strixhaven: School of Mages, Dungeons & Dragons: Adventures in the Forgotten Realms, Innistrad: Midnight Hunt, Innistrad: Crimson Vow, Kamigawa: Neon Dynasty, and Streets of New Capenna.

249. On information and belief, Defendants infringed at least one card within every Expansion Set listed above.

250. Wizards, which registers copyrights in intellectual property by "set," has registered additional copyrights to protect smaller but numerous Magic card releases categorized as Commander, Secret Lair, Introductory, Compilation, "Straight-to-Modern," Duels of the Planeswalkers, Duel Decks, Premium Series, Masters Series, Holiday Gift Boxes, Masterpiece Series, Conspiracy, the Annex Sets, the Un-Sets, Challenger, Convention Exclusives, and other collectible sets, collectively the "Additional Sets."

251. On information and belief, Defendants infringed at least one card within no fewer than 91 Additional Sets that correspond to copyrights registered by Wizards.

252. Exhibit 31 reflects 117 of Wizards' registered copyrights in Magic that correspond to at least one, if not many, infringing product(s) sold by the Enterprise directly through the ProxyKing web store, where the copyright's effective registration was within three months of publication (or was prepublication).

253. Exhibit 32 reflects 64 of Wizards' registered copyrights in Magic that correspond to at least one, if not many, infringing product(s) sold by the Enterprise through ProxyKing's web store, where the copyright's effective registration was outside three months of first publication.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

254. Exhibit 33 reflects 79 of Wizards' registered copyrights in Magic that correspond to at least one, if not many, infringing product(s) sold by the Enterprise through the PrintMTG web store, where the copyright's effective registration was within three months of publication (or was prepublication).

255. Exhibit 34 reflects 27 of Wizards' registered copyrights in Magic that correspond to at least one, if not many, infringing product(s) sold by the Enterprise through the PrintMTG web store, where the copyright's effective registration was outside three months of first publication.

256. The registrations identified in Exhibits 33 and 34 overlap with those identified in Exhibits 31 and 32. 96 of the registrations correspond to products sold through both the ProxyKing and PrintMTG web stores. Together, Exhibits 31 through 34 identify 191 unique registered works that are infringed by at least one offering from one or both Counterfeit Storefronts.

257. Many of the registrations listed in Exhibit 32 were effective before the Enterprise began operating in 2020. Where a registration listed in Exhibit 32 or Exhibit 34 was effective before Defendants' infringement of the corresponding work commenced, 17 U.S.C. § 412 does not limit the remedies available to Wizards for that infringement.

**E. Wizards' Efforts to Prevent Counterfeiting**

258. Wizards goes to great lengths to protect its products from infringement.

259. Wizards contracts selectively and with great care to print cards that meet its exacting quality standards and with features that are difficult to counterfeit.

260. Wizards works with select vendors to produce authentic Magic cards.

261. These vendors are all under contract with specified terms of exactly which products can be printed, and in specific quantity ranges.

262. Wizards uses select paper stock and anti-counterfeiting features in its product that make it possible for players and collectors to identify real Wizards product, and to make it more difficult for counterfeiters to pass off inauthentic product.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

263. Wizards uses bespoke plastic overwrap to secure select Magic products.

264. The overwrap includes a repeating pattern that contains a registered trademark owned by Wizards: TM Reg. No. 3188554 (class 16) and No. 3188555 (class 28), TM certificates attached as Exhibits 3 and 4.

265. Wizards products, by design, include registered trademarks in every card, including on the card back - the “Magic the Gathering” registered design.

266. Card backs (except for double-faced cards) prominently feature the five-mana symbol, registered as TM Reg. No. 1969759, Exhibit 9; and the word mark: MAGIC THE GATHERING registered as TM Reg. No. 1919923, 2834808, 4372679, 4383290, 5045728, and 5191296, TM certificates attached as Exhibits 10-15.

267. Many Wizards products that are infringed by the Enterprise include, by design, various other registered trademarks including the mana symbols and Planeswalker symbol.

268. The word mark WIZARDS OF THE COAST is registered as TM Reg. No. 1779746 and 2130886 (Exhibits 1 and 2).

269. Wizards’ modernized figurative WIZARDS OF THE COAST mark is registered as TM Reg. No. 6630565, 6630566, 6630567, and 7075959 (Exhibits 5-8).

270. Wizards’ “Planeswalker” symbol, a glyph featuring five spikes pointing up and one pointing down, is featured in six word and design combined marks and three figurative marks: TM Reg. Nos. 5675300, 5675348, 6019842, 6031091, and 6411744 combining the Planeswalker symbol with the words “MAGIC THE GATHERING” or “MAGIC”; 5317915, 5643885, and 5546136, featuring the Planeswalker symbol alone; and 5466075 featuring the combination of the Planeswalker with the number 25. In order, these TM registration certificates are attached as Exhibits 16 through 24.

271. The majority of Magic cards produced by Wizards include at least one of the five “Mana Symbols,” which are unique glyphs that correspond to a color identity of each card (that has a color identity). The Mana Symbols are registered with the USPTO as the following



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

trademarks: 4698054 (white), 4447983 (blue), 4447982 (green), 4447981 (black), and 4447980 (red), corresponding to TM registration certificates attached as Exhibits 25-29 respectively.

272. Many Wizards products that have been released more recently include, by design, an anti-counterfeiting feature in the form of a holographic image on the card that is intentionally difficult to duplicate.

273. The holographic anti-counterfeiting feature includes a registered trademark, specifically US Reg. No. 5643885, the “Planeswalker Symbol,” as well as alternating microprinted Mana Symbols described above, corresponding to the US Reg. No’s 4698054, 4447983, 4447982, 4447981, and 4447980 (Exhibits 25-29).

274. Wizards’ products, by design, include copyright-protectable material in every card in the form of original artwork and text.

275. The purpose of Wizards’ copyright registration is to inform the public that Wizards’ products are owned and protected original intellectual property.

276. Every Magic card published by Wizards includes a prominent copyright notice.

277. The purpose of the prominent copyright notice is to inform the public that Wizards is the owner of original intellectual property in its products.

278. Wizards goes to significant lengths to control the quality and appearance of its products.

279. Wizards also relies on the community of players and local game stores to help it identify and curtail counterfeiting.

280. Wizards provides an address to receive cards that players believe to be counterfeits at https://magic-support.wizards.com/hc/en-us/articles/360000194006-Identifying-Counterfeit-Cards.

281. Wizards provides a “Buyer Beware” help article with information that players and local game stores can use to help them identify counterfeit products, at https://magic.wizards.com/en/news/feature/buyer-beware-2004-04-26.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

282. Wizards publishes a comprehensive fan content policy that lays out specifically what fans of its brands can and cannot do with Wizards' intellectual property ("IP").

283. The current Wizards Fan Content Policy (the "Fan Content Policy") was published in 2017 and is accessible at https://company.wizards.com/en/legal/fancontentpolicy.

284. The Fan Content Policy is targeted specifically at allowing fans to create their own creative fan content by including Wizards' IP, such as: "fan art, videos, podcasts, blogs, websites, streaming content, tattoos, altars to your cleric's deity, etc."

285. The Fan Content Policy explicitly calls out that Wizards' IP includes "the cards, creatures, books, games, gameplay, pictures, stories, logos, animations, artwork, plots, locations, histories, characters, graphics, files, text, and other materials published by Wizards of the Coast."

286. The Enterprise prominently uses Wizards' IP to create their infringing products, in violation of the Fan Content Policy.

287. The Fan Content Policy explicitly prohibits the verbatim copying and reposting of Wizards' IP, specifically calling out "creating counterfeit/proxy Magic: The Gathering cards," regardless of whether that content is distributed for free.

288. Wizards has expressed that it has no desire to police players' use of proxies to test out deck ideas or to play casually with friends, even in a store.

289. Wizards' expectations on personal and noncommercial use of proxies by players were described by Wizards in its blog post, "On Proxies, Policies, and Communication," of January 14, 2016 accessible at: https://magic.wizards.com/en/news/announcements/proxies-policy-and-communication-2016-01-14

290. There is no reason for a proxy to reproduce Wizards' art or logos if its use is for playtesting, and legitimate proxies would not pass for real cards.

291. Defendants, like other counterfeiters, attempt to conflate Counterfeit Cards with proxies.

292. A Counterfeit Card used in a deck is necessarily being used as a "proxy" because it is not an authentic Magic card; but it is no less a counterfeit by virtue of being used as a proxy.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

293. A Counterfeit Card being sold for use as a proxy is, by definition, a commercial use of Wizards' IP, and its manufacture and sale infringes no matter what words Defendants used to describe how their customers should or shouldn't use their product.

294. The Enterprise's products are counterfeit Magic cards, not proxies, because they are designed to be indistinguishable from authentic product, which is in violation of the Fan Content Policy.

295. The Fan Content Policy explicitly prohibits fans from selling any fan content made using Wizards' IP.

296. The Enterprise sells its counterfeit products online in violation of the Fan Content Policy.

297. The Fan Content Policy explicitly prohibits members of the public from appropriating Wizards' logos and trademarks.

298. The Enterprise prominently misappropriates numerous Wizards logos and trademarks.

299. The Fan Content Policy explicitly prohibits members of the public from using Wizards' IP when they have been asked to stop.

300. Members of the Enterprise have been placed on notice, both through Wizards' online articles and directed outreach, that their misappropriation of Wizards' IP is prohibited.

301. The Fan Content Policy prohibits members of the public from appropriating Wizards' IP that includes third party rights such as crossover IP.

302. The Enterprise prominently features and sells counterfeit Magic cards that contain third party, licensed IP.

## IV. THE PRINTMTG ENTERPRISE

303. The PrintMTG Enterprise maintains many websites offering counterfeit Magic cards (the "Counterfeit Storefronts"), Counterfeit Cards for other collectible card games and counterfeit LEGO minifigs (the "Other Infringing Storefronts"), and custom print products



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

including vinyl stickers (the “Sticker Storefronts” and, collectively with the Counterfeit Storefronts and the Other Infringing Storefronts, the “Storefronts”) for sale.

304. The Enterprise also makes heavy use of company-controlled review websites within the meaning of 16 C.F.R. § 465.6 (the “Company-Controlled Review Websites”) to deceptively drive revenue and web traffic to the Storefronts.

305. A list of the Storefronts and Company-Controlled Review Websites identified by Wizards as of the filing of this complaint is attached hereto as **Exhibit 35.**

306. The Dunn Defendants, the Monsen Defendants, the Production Defendants, the Designer Defendants, the Fulfillment Defendants, the Professional Services Defendants, the Marketing Defendants (all collectively the “Individual Defendants”), the Entity Defendants, the Storefronts, and the Company-Controlled Review Websites collectively form the Enterprise.

## A. The Origin of the PrintMTG Enterprise

307. The original PrintMTG Enterprise website, **ProxyMTG.com**, was registered on August 17, 2020, by Defendant Ryan Dunn.

308. ProxyMTG.com was a simple website, little more than a Shopify instance hosting hundreds of Counterfeit Cards.

309. Wizards issued DMCA Takedown Requests to Shopify for the counterfeit content on ProxyMTG.com on October 7, 2020.

310. Shopify removed the reported listings that same day.

311. Within two weeks, however, ProxyMTG.com had replaced all the removed listings with entirely new Counterfeit Cards for sale.

312. Once again, Wizards issued takedown requests, this time including a trademark infringement notice for the unauthorized use of their Planeswalker emblem on every page of the website.

313. This time, Shopify not only removed the reported listings but disabled the entire website, which had up to that point been hosted with Shopify itself.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

314. Undeterred, Ryan Dunn (or someone acting on his behalf) simply transferred the hosting for the website to an offshore hosting service on or around October 27, 2020, replacing the counterfeit sales listings with a message saying “Folks, due to technical issues all listings have been removed. For high quality proxies, please visit: proxyking.biz. In the meantime, we are working on a line of ORICA Proxy cards that utilize all of our own assets and logos. We will be launching that soon.”

315. No such line of proxy cards ever manifested.

316. Instead, the PrintMTG Enterprise broadened, deepened, and diversified its footprint, moving from a single website selling counterfeit Magic cards to an organized ring of well-coordinated actors driving interested purchasers towards a series of purportedly independent storefronts using widespread consumer deception and the misappropriation of other people’s names and domains, thereby immunizing its business from being wholly stymied by a single takedown.

**B. The Development of the PrintMTG Enterprise**

317. After suffering the setback of having their previous storefront taken down for copyright and trademark infringement, the PrintMTG Enterprise made some changes. Those changes, including offshore hosting, false and privacy-shielded contact information, alias personas, and a web of purportedly independent Storefronts, concealed the identities of the persons responsible. As a result, Wizards did not learn the identities of the Defendants or the common control of the Storefronts until 2026.

318. On information and belief, Ryan Dunn registered the domain name FastStickers.com in April 2021.

319. Defendant Ryan Dunn formed Defendants CK Brands LLC and CK Cards LLC in July and November 2021, respectively, and initially identified the Salem Canal Address as the principal place of business of each.

320. At the time, the Salem Canal Address was owned by Ryan’s parents, Defendants Christopher and Maren Dunn.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

321. Ryan's brother, Defendant Tanner Dunn, formed non-defendant entity PokemonProxy in August of 2021, identifying the Salem Canal Address as its principal place of business.

322. Tanner Dunn also formed Defendant Proxy Paradise LLC in September of 2021, identifying his residence at 308 West North Temple, Apt #550, Salt Lake City, UT, 84103 as its principal place of business.

323. On information and belief, Ryan and/or Tanner Dunn registered TrinketKingdom.com in December 2021.

324. In April or May 2022, Ryan Dunn registered the domain name YouStickers.com, and, on information and belief, the private domains CustomStickers.com and Printiverse.com.

325. In 2022 and 2023, ProxyKing.biz, FastStickers.com, YouStickers.com, CustomStickers.com, Printiverse.com, and TrinketKingdom.com all used the legacy Google user analytics tag ua-181807561, indicating that all six websites were under common control.

326. On information and belief, the PrintMTG Enterprise launched FastStickers.com, YouStickers.com, and CustomStickers.com (collectively, the "Sticker Sites") not as an independent business but as a front through which to launder the revenue gained from their widespread infringement of Wizards' intellectual property.

327. This belief is supported, *inter alia*, by the deception and fraud present in the Sticker Sites from the moment of their inception.

328. On June 30, 2021, at or shortly after launch, the website at FastStickers.com had an "About Us" page which read, in relevant part:

> The Fast Stickers story began when husband and wife Ryan and Melissa Dunn got the bug to start a business. Both had been working in corporate jobs that didn't "have much heart." They wanted to do something more entreprenurial [sic], interesting, meaningful, and delightful.
>
> In 2015, Ryan held a company-wide meeting to officially introduce our core values of Quality, Speed, Value, and Heart. Formally stating these values has caused us to think actively about them on a daily basis, and to act in accordance with them. We even hold an



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

> annual "Ink Awards" ceremony to honor the individuals whose actions best demonstrate each core value. Our commitment to these values is genuine - it's a way of doing business that defines our company.

329. On information and belief, FastStickers did not exist in 2015, or indeed at any time prior to the registration of the FastStickers.com domain name in 2021.

330. On information and belief, the statement quoted in paragraph 328 is a deliberate falsehood intended to deceive consumers about the history and longevity of FastStickers.

331. By the summer of 2022, the PrintMTG Enterprise was operating out of a business park at 240 W. Center St., Suite 100, Orem, UT 84057 (the "240 Orem Address").

332. Both YouStickers.com and CustomStickers.com identified the 240 Orem Address as their operating addresses on their landing pages.

333. FastStickers.com had a published address of 40 W. Center St., Suite 100, Orem UT 84057. This address differs from the 240 Orem Address only in the absence of the initial "2" in the street number, and, on information and belief, that was a simple typographical error and was a reference to the 240 Orem Address.

334. On June 29, 2022, at or shortly after launch, the website at CustomStickers.com had an "About Us" page which contained text identical to the page at FastStickers.com, including the 2015 date.

335. However, by December 8, 2023, the date on that page had changed to 2021, so that the page thereafter read, in relevant part:

> The Custom Stickers story began when husband and wife Ryan and Melissa Dunn got the bug to start a business. Both had been working in corporate jobs that didn't "have much heart." They wanted to do something more entreprenurial [sic], interesting, meaningful, and delightful.
>
> In **2021**, Ryan held a company-wide meeting to officially introduce our core values of Quality, Speed, Value, and Heart. Formally stating these values has caused us to think actively about them on a daily basis, and to act in accordance with them. We even hold an annual "Ink Awards" ceremony to honor the individuals whose actions best demonstrate each core value. Our commitment to these



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

> values is genuine - it's a way of doing business that defines our company.

(emphasis added)

336. The change in the date further demonstrates that the story on the page is fraudulent.

337. All of the Sticker Sites sell or have sold custom vinyl stickers.

338. In the summer of 2022, all the Sticker Sites identified the 240 Orem Address as their postal address.

339. All the Sticker Sites now identify the Print Shop Address as their postal address.

340. All of the Sticker Sites identify the same contact phone number, 385-223-8109 (the "Print Shop Phone Number").

341. The PrintMTG Enterprise also created social media profiles for each of the Sticker Sites, as follows:

- FastStickers maintains a Facebook page at https://www.facebook.com/FastStickersUS (the "FastStickers FB"). This page is now associated with CustomStickers.
- YouStickers maintains a Facebook page at https://www.facebook.com/profile.php?id=61558115310794 (the "YouStickers FB Page").
- YouStickers also maintains two Instagram accounts, one at https://www.instagram.com/youstickerscom/ (the "YouStickersCom IG") and one at https://www.instagram.com/youstickersus/ (the "YouStickersUS IG").
- CustomStickers maintains a Facebook page at https://www.facebook.com/customstickersus1 (the "CustomStickers FB").
- On information and belief, CustomStickers also previously maintained a Facebook page at https://www.facebook.com/customstickers_us/ (the "Previous Customstickers FB"). This page is no longer publicly visible.
- CustomStickers also maintains an Instagram page at https://www.instagram.com/customstickers_us/ (the "CustomStickers IG").
- CustomStickers also maintains a TikTok page at https://www.tiktok.com/@customstickers_us (the "CustomStickers TT").

342. The YouStickersCom IG, the YouStickersUS IG, and the CustomStickers IG frequently contain identical content.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

343. The YouStickers.com website has a page called “Our Team” which features a picture of the YouStickers staff in front of a large HP Indigo digital printing press.

344. The CustomStickers.com website has a page called “Our Team” which features cartoon-style drawings of the CustomStickers staff.

345. In fact, some of the cartoon drawings from CustomStickers appear to be traced or AI-generated from the photographs at YouStickers.

346. On information and belief, there is no separation of operations between the Sticker Sites. They occupy the same physical space, employ the same people, use the same Google Analytics tag on their websites, and produce the same goods on the same equipment.

347. Despite this unity of operations, the Enterprise takes great pains to act as though the Sticker Sites are separate entities which are not only at arm’s length, but actively in competition with one another.

348. While CustomStickers accurately identifies its founder as Defendant Ryan Dunn, YouStickers has no personnel named or identified on its site outside of the “Our Team” photograph referenced above.

349. Press releases, however, identify a “John Monsen” as the COO of YouStickers.

350. “John Monsen” is also identified as the individual who writes reviews of print and sticker products and services at PrintReviewer.com.

351. On information and belief, “John Monsen” is an alias for Ryan Dunn.

352. PrintReviewer claims to publish “independent reviews and comparisons of online print services.”

353. PrintReviewer also claims that “If a relationship exists that could reasonably be seen as a conflict (ownership, employment, financial interest, family relationship, etc.), we disclose it clearly on the relevant page.”

354. This claim is false.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

355. For example, on December 26, 2025, "John Monsen" published a review on PrintReviewer.com titled "Best Sticker Companies of 2026 Ranked and Reviewed with Science."

356. This review ranks six different custom sticker printers. CustomStickers is ranked #1, with YouStickers "basically right behind it" at #2.

357. No disclosure of any relationship between "John Monsen" and any of the Sticker Sites appears anywhere on PrintReviewer.com.

358. Even if "John Monsen," COO of YouStickers, was both real and an entirely separate person from the coincidentally (and identically) named "John Monsen" who operates PrintReviewer, the Editorial Policy listed would reasonably require PrintReviewer to disclose the coincidence in names and explain the separate identity of the two "John Monsens".

359. No such disclosure or explanation was made.

360. Nor do any of the other reviews on PrintReviewer, which put YouStickers head-to-head against CustomStickers, contain such a disclosure or explanation.

361. All of these review pages, however, link to both YouStickers.com and CustomStickers.com, in most cases more than once.

362. "John Monsen" is also identified as the "editor and creator" of CultureofGaming.com, a website for "practical guides, thoughtful commentary, and no-nonsense reviews across tabletop and TCGs."

363. Like PrintReviewer, CultureofGaming maintains an "Editorial Policy" page that promises to disclose conflicts of interest.

364. Like PrintReviewer, CultureofGaming hosts many reviews of sticker companies, including one that pitches CustomStickers directly against YouStickers as well as several that compare one or the other against other non-Enterprise sticker printers.

365. Like PrintReviewer, no conflicts of interest are disclosed on any of CultureofGaming's pages.

366. The username for the CultureofGaming author "John Monsen" is "rmmdunn99."



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

367. On information and belief, the username “rmmdunn99” is used by Defendant Ryan Dunn.

368. PrintReviewer and CultureofGaming are far from the only examples of such conduct. The PrintMTG Enterprise maintains dozens of websites which purport to review YouStickers and CustomStickers against each other or against third-party sites, almost always ranking CustomStickers at #1 and YouStickers at #2.

369. On information and belief, all these websites are Company-Controlled Review Websites under the meaning of 16 C.F.R. § 465.6 (“Company-controlled review websites or entities”).

370. On information and belief, the PrintMTG Enterprise has gone to an enormous amount of effort to deceptively portray the Sticker Sites as independent businesses when they are anything but.

371. This is the kind of conduct the Federal Trade Commission has declared an unfair or deceptive act or practice in 16 C.F.R. § 465.6.

372. On information and belief, this massive disinformation network’s treatment of the Sticker Sites has two purposes.

373. First, to deceive consumers into believing that these are highly performing businesses with dozens of independent and unaffiliated glowing reviews.

374. Second, to deceive the public into believing that these are *two* businesses, not one, making it easier to hide the revenue from their unlawful activities.

375. On information and belief, the unity of operations among the Sticker Sites extends to Printiverse.

376. Like the Sticker Sites, Printiverse also produces custom stickers.

377. Printiverse also maintains an Instagram page at @printiverseus with content that is frequently identical to that of YouStickers, CustomStickers, or both, and the website shares the same Google Analytics tag.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

378. The Printiverse Instagram account also hosts videos showing the interior of a space which, on information and belief, is the Print Shop.

379. However, unlike the Sticker Sites, the Printiverse website does not list a contact address or phone number.

380. The Printiverse Facebook page lists the Print Shop Phone Number as the contact phone number and has support@customstickers.com as a contact email address.

381. Also, unlike the Sticker Sites, the Printiverse website offers "proxy" Magic cards, along with Pokémon and Lorcana cards.

382. The "Print MTG Proxies" page on Printiverse features a "Frequently Asked Questions" section. One of the questions, along with its answer, is as follows:

> [Q.] What quality can I expect from your printed Magic cards?
>
> [A.] We pride ourselves on providing high-quality MTG proxies. Our cards are printed on premium cardstock, ensuring durability and a professional finish. The card backs are carefully designed to resemble the original MTG cards, and the images are clear and not blurry, giving you a proxy that's close to the real thing.

383. The words "MTG cards" in blue text links to ProxyKing.biz.

384. The Printiverse Terms of Service page contains references to YouStickers.

385. The Printiverse Website also maintains a blog which functions as a Company-Controlled Review Website within the meaning of 16 C.F.R. § 465.6.

386. This network of websites all cross-linking and cross-promoting each other benefits the PrintMTG Enterprise in two ways: first, by drastically inflating the apparent size of the sticker business and the market for those stickers by giving the impression that there were three or more competing businesses rather than just one, and second, by drastically increasing the digital footprint of both the sticker and counterfeit arms of the Enterprise's operations through deceptive Search Engine Optimization ("SEO").

387. Because these webpages were newly-created, they were not weighted as heavily in the Google search index.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

388. The PrintMTG Enterprise was hampered by being a new player on the scene without an established digital footprint.

389. And so, members of the PrintMTG Enterprise, including on information and belief Defendants Raili Lewis, Brynna Higginson, and Katelyn Smith, developed an even more deceptive strategy: rather than building websites, they would steal them.

390. The PrintMTG Enterprise embarked on a campaign of “domain hijacking” – waiting for an Internet domain associated with a long-standing small business or niche subject matter interest to expire due to the inattention of the owner and then snatching it up before the owner has a chance to renew the domain.

391. This is an established practice of the Enterprise, as indicated by a WIPO action that successfully retrieved a hijacked domain from the Enterprise and returned it to its rightful owners.

392. By maintaining the continuity of the domain and replacing its previous and legitimate content with deceptive marketing content pointing Internet searchers at PrintMTG Enterprise sites, the PrintMTG Enterprise could market its own wares on the back of the rightful domain owner’s goodwill.

393. One such stolen domain was KrakenOpus.com, the domain previously belonging to the luxury British publishing house Kraken Opus.

394. Because the KrakenOpus website had been operating since 2005, the Google SEO algorithm places great weight on its content even though the ownership of the website has changed from its original owner to the Enterprise.

395. Like PrintReviewer and CultureofGaming, KrakenOpus maintains a “Disclosure Policy” site which promises to disclose any close relationships between itself and the products it reviews.

396. Like PrintReviewer and CultureofGaming, that policy is never honored.

397. KrakenOpus claims that its editor is one “Kit Yarrow.”



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

398. On information and belief, “Kit Yarrow” is an alias for Ryan Dunn or another member of the PrintMTG Enterprise.

399. KrakenOpus has a “blog” section, which consists largely of reviews comparing various offerings in two distinct markets: counterfeit Magic cards and custom vinyl stickers.

400. For example, an article posted on April 13, 2026, and titled “Best MTG Proxy Sites in 2026”, compares and contrasts ProxyKing.biz, PrintMTG.com, and ProxyMTG.com.

401. All three of these websites are maintained by the PrintMTG Enterprise.

402. ProxyKing.biz claims that *its* editor is *also* “Kit Yarrow.”

403. Despite this clear conflict of interest, even if “Kit Yarrow” were a real person, the relationship is never disclosed – neither on that page nor on any of the other many pages on KrakenOpus.com which review suppliers of counterfeit Magic cards.

404. However, the person currently using the name “Kit Yarrow” for these purposes is not the real Kit Yarrow. The real Kit Yarrow, a highly regarded consumer psychologist and professor, passed away in 2020.

405. During her lifetime, Dr. Yarrow maintained a professional website under her name at KitYarrow.com. That website is still linked to from, among many other sources, Dr. Yarrow’s personal Facebook page.

406. After her death, however, the KitYarrow.com domain was privately registered by an unknown member of the PrintMTG Enterprise on or around August 2022.

407. On or around March of 2026, that registration was moved into the name of ProxyKing.

408. The “About” page of KitYarrow.com features a stock photo of a young man and describes “Kit” as a “seasoned business leader, consultant, and speaker with a passion for driving innovation and strategic growth.” The use of such language is a clear attempt to connect this imposter “Kit Yarrow” with the distinguished and real Dr. Kit Yarrow.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

409. Like KrakenOpus.com, KitYarrow.com has been in nearly continuous operation for more than a decade, thus increasing the weight of its current reviews inside the SEO algorithm.

410. Like PrintReviewer, CultureofGaming, and KrakenOpus, KitYarrow.com has a "blog" section comprised largely of product reviews of counterfeit Magic cards and custom print products, including custom vinyl stickers.

411. Like PrintReviewer, CultureofGaming, and KrakenOpus, these reviews *always* rate the PrintMTG Enterprise sites most highly, regardless of the competition involved.

412. Fake reviews and undisclosed company-controlled reviews deceive consumers.

413. Consumers rely upon online reviews in selecting among an array of products.

414. Review manipulation is a common tactic to deceive the consumer.

415. Defendants obtain fraudulent reviews in an attempt to boost their own products, deceive the end user, and continually recycle content within their own ecosystem.

416. This conduct is illegal, anti-consumer, and is an unfair and improper business practice.

**C. The Current State of the PrintMTG Enterprise**

417. As the years have passed, the PrintMTG Enterprise has only grown.

418. Customers can purchase (or be referred for purchase of) counterfeit Magic cards from the PrintMTG Enterprise via more than a dozen Counterfeit Storefronts, including:

- ProxyKing.biz
- PrintMTG.com
- ProxyMTG.com
- Printiverse.com
- PrintACube.com
- HundredDollarCube.com
- CommanderProxies.com
- MTG.cards
- MTGedh.com
- PrintMTGCards.com
- BLProxies.com
- ProxyFoundry.com
- BootlegMTG.com
- Nerdventure.com
- TrinketKingdom.com



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

- MTGCardMakers.com
- CreatePlayingCards.com
- https://www.etsy.com/shop/PrintACube

419. Customers can also purchase custom and pre-made vinyl stickers and other non-infringing print products from the PrintMTG Enterprise through the Sticker Storefronts, including:

- CustomStickers.com
- YouStickers.com
- Printiverse.com
- PrintInvitations.com
- PrintCards.io

420. Customers can also purchase other infringing products, such as counterfeit Pokémon cards and counterfeit LEGO minifigs, from the PrintMTG Enterprise through the Other Infringing Storefronts, including:

- PokemonProxy.co
- Minifigs.biz

421. All of the Storefronts are controlled and operated by the Enterprise.

422. There is no separation between the operation of the Storefronts.

423. Each and every one of the Storefronts operates out of the Print Shop, an approximately 10,000-square-foot light-industrial space located at the Print Shop Address.

424. Images and video posted to the Enterprise's social media accounts make clear that anyone working in the Print Shop has visibility throughout the entire production space, such that all employees are necessarily aware of all operations within it.

425. The commercial tenant on the Print Shop lease is Defendant CK Brands LLC.

426. When purchasing cards from ProxyKing.biz, the payee is CK Brands LLC.

427. On information and belief, all the Storefronts process their payments through CK Brands LLC.

428. ProxyKing.biz is the center of the ready-to-purchase vertical within the PrintMTG Enterprise, consisting of a website at https://proxyking.biz/ (the "ProxyKing Website") and a Facebook page (the "ProxyKing FB") at https://www.facebook.com/ProxyKing99.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

429. Ready-to-purchase counterfeits can also be purchased from the PrintMTG Enterprise at TrinketKingdom.com and Nerdventure.com.

430. The oldest post on the ProxyKing FB is a message from October 27, 2020, which reads “Folks - we are back up at ProxyKing.biz sorry for the downtime. Currently updating inventory”.

431. On information and belief, this post communicated the Enterprise’s pivot to the then-new Storefront of ProxyKing after ProxyMTG had been taken down as described in paragraph 313.

432. As of the drafting of this complaint, the ProxyKing Website identifies 4050 Premier Drive, Dallas, Texas 75261 (the “4050 Premier Drive Address”) as its business address.

433. This address does not exist.

434. There is a 4050 Premier Dr, Plano, TX 75023, which is a light industrial space, hosting several automotive businesses and a second-hand store, but there is no business by the name ProxyKing located there.

435. Until January 2026, the ProxyKing Website displayed a different address: 2801 West Airport Freeway, Dallas, Texas 75261-4127.

436. This address exists, but belongs to Heritage Auctions, an extremely reputable auction house specializing in ephemera and memorabilia, including Magic cards and other trading cards and collectible card game cards.

437. ProxyKing is not affiliated with Heritage Auctions and was using their address without their permission.

438. The ProxyKing Website also displays a phone number of 214-617-8162 (the “ProxyKing Phone Number”) and a support email address of ProxyMtG@protonmail.com (the “ProxyMTG Protonmail Address”), as well as a message informing the user that “Email is our main Customer Service Channel.”

439. The ProxyKing Phone Number is not a valid and functioning phone number.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

440. ProtonMail is a privacy-oriented email service which does not record customer information beyond what is required for payment, and which will only disclose even that information in response to a Swiss court order.

441. On information and belief, the ProxyKing Website knowingly displays these false addresses and non-functional phone numbers so that they will appear to be a normal, above-board business, without the vulnerability to discovery that displaying their true location or contact information would bring.

442. Photographs on the ProxyKing FB show counterfeit Magic cards with intact Copyright Management Information (hereafter "CMI").

443. The cards sold by ProxyKing (the "ProxyKing Cards") are not proxy cards. They are Counterfeit Cards.

444. The ProxyKing Cards feature the original Wizards art, to which Wizards owns the copyright.

445. The ProxyKing Cards display the Wizards CMI.




446. The ProxyKing Cards also use the official Wizards card back image.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax




447. On information and belief, the PrintMTG Enterprise chose to use the original art, the Wizards CMI, and the official Wizards card back image on the ProxyKing Cards with the intent to cause post-sale confusion.

448. Although the ProxyKing Website notes up front that the ProxyKing Cards are not tournament legal and even maintains a "Use Policy" page that states the same, deeper investigation demonstrates that ProxyKing's actual intent is that the cards pass for the real thing.

449. For example, one blog article on the ProxyKing Website expressly states "Our proxies are meant to mimic original Magic cards" and "We focus on getting all the details right when we make magic cards, from the mana symbols to the holo stamp. […] We continually evaluate our process and work hand in hand with our cardstock suppliers to ensure that our product is as close as possible to the original card."

> At ProxyKing.biz we print our custom MtG proxies using high quality card stock and high resolution industrial printers. Our proxies are meant to mimic original Magic cards. In other words, we try to make our proxy cards with the same print quality, weight, and dimensions as a typical magic card.

450. Their customers know it, too.

451. Reviews for ProxyKing say things like "It feels like I own the real thing" and "100% authentic looking".



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax







452. On information and belief, ProxyKing did not have a "Use Policy" page prior to 2026.

453. Even now, the ProxyKing Website instructs people to "use [ProxyKing Cards] in sanctioned tournaments at your own risk" but also that "it's extremely unlikely that anyone will know or care that you are using proxy cards."

454. The ProxyKing Website features a "blog" section (the "ProxyKing Blog") with articles about Magic and other trading card games.

455. Many of the newer articles claim to be written by Defendant "Kit Yarrow."

456. The WordPress username for the "Kit Yarrow" author is "cstickers99."

457. On information and belief, "cstickers99" is a reference to CustomStickers.

458. One article, titled "ProxyKing Launches MTG Proxy Website Redesign" and dated October 1, 2025, is attributed to "colin." On information and belief, "colin" is Defendant Colin Dunn.

459. Many of the ProxyKing Blog articles link to other Storefronts within the PrintMTG Enterprise.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

460. For example, the article "National Sticker Day: Fun Sticker Ideas MTG Players Actually Use," dated January 12, 2026, and attributed to author "Proxyking Wordpress," links to a page on the CustomStickers Website, https://customstickers.com/pages/stickers, from the word "sticker" used in the following sentence: "It's meant to celebrate the humble sticker, from goofy art to practical labels."




461. The front page on the ProxyKing Website also links to that same CustomStickers page from the phrase "order vinyl stickers" in the paragraph "Some other companies out there use cheap square stickers that they put on their cards. We don't do that, we only print directly to high quality card stock. We only use or order vinyl stickers for our packaging and labels, not our proxies."



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax




462. On information and belief, this is part of an SEO strategy called "backlinking," in which links from other websites point back to the website intended to receive the SEO boost, telling search engines that this beneficiary website is trusted, relevant, and/or authoritative, which helps improve search engine rankings.

463. The websites of the PrintMTG Enterprise make extensive use of backlinking to other PrintMTG Enterprise websites.

464. The internal Facebook links on the side of the ProxyKing Website link to https://facebook.com/commanderkingdom (the "CommanderKingdom FB"), rather than the ProxyKing FB.

465. The CommanderKingdom FB is not currently publicly visible.

466. The ProxyKing Website is affiliated with Defendant CK Brands, as their shared Venmo demonstrates.

467. Although Venmo is not currently a payment option for the ProxyKing Website, it used to be in late 2025.

468. When purchasing a ProxyKing Card through the ProxyKing Website using Venmo, the Venmo payee for the transaction is "CK Brands, LLC."



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

469. On information and belief, "CK Brands" is a reference to "CommanderKingdom."

470. PrintMTG.com is the center of the print-on-demand vertical within the PrintMTG Enterprise, consisting of a website at https://printmtg.com/ (the "PrintMTG Website"), a Facebook page at https://www.facebook.com/PrintMTGcards/ (the "PrintMTG FB"), and an Instagram account at https://www.instagram.com/printmtg/ (the "PrintMTG IG").

471. Other print-on-demand Storefronts operated by the PrintMTG Enterprise include CommanderProxies.com, PrintACube.com, HundredDollarCube.com, ProxyMTG.com, MTGedh.com, CreatePlayingCards.com, ProxyFoundry.com, Printiverse.com, MTGCardMakers.com, and MTG.cards (collectively, the "POD Storefronts").

472. Many of the POD Storefronts also maintain affiliated social media accounts, including but not limited to:

- The Facebook page at https://www.facebook.com/profile.php?id=61587251834420 (the "ProxyMTG FB");
- The Instagram account at https://www.instagram.com/proxymtgcom/ (the "ProxyMTG IG 1");
- The Instagram account at https://www.instagram.com/proxy.mtg/ (the "ProxyMTG IG 2");
- The Facebook page at https://www.facebook.com/PrintMTGcards/ (the "PrintMTG FB");
- The Instagram account at https://www.instagram.com/printmtg/ (the "PrintMTG IG");
- The Facebook page at https://www.facebook.com/PrintiverseUS/ (the "Printiverse FB");
- The Instagram account at https://www.instagram.com/printiverseus/ (the "Printiverse IG"); and
- The Instagram account at https://www.instagram.com/printacube/ (the "PrintACube IG").

473. The PrintMTG Enterprise adds more Storefronts constantly.

474. The PrintMTG Website currently displays the 4050 Premier Drive Address.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

475. Prior to 2026, however, it displayed an address of 18907 Platte River Way, Dallas TX 72712 (the “Platte River Address”). The ZIP code displayed, 72712, is not assigned to Dallas, Texas.

476. On information and belief, the Platte River Address is a prior residence of Defendants Ryan and Melissa Dunn.

477. The PrintMTG Website also displays a phone number of 720-803-1314 (the “PrintMTG Phone Number”).

478. The PrintMTG Phone Number, when dialed, leads to a voicemail box with a generic voicemail message that only references the phone number.

479. PrintMTG advertises products with both PrintMTG branding and ProxyKing branding.

480. PrintMTG, like all the POD Storefronts, allows customers to create bulk counterfeit orders with very little effort.

481. After navigating to the PrintMTG Website and clicking on “Order,” the user is prompted to “Paste your decklist here, then click ‘Load Cards’ to add them to your order.”

482. By default, the cards all load in with the Wizards-copyrighted art and the Wizards CMI on the bottom.

483. After creating the decklist and adding it to the cart, the user can then check out as-is with the default options or customize the deck.

484. “Customizing” the deck allows the user to choose between different Wizards-copyrighted art and layout options.

485. Even with this “customization” option, the CMI at the bottom remains intact.

486. The PrintMTG Website also offers users the option to print one-off cards via their Custom Card Maker.

487. In this option, the user enters the name of a card. The PrintMTG Website then auto-populates the card listing with the original Wizards-copyrighted art.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

488. Until March of 2026, this option also auto-populated the Artist and “Legal Text” fields with the original Wizards artist and Wizards CMI.

489. After March 2026, these fields remained unpopulated or populated solely with filler text, even after the card was chosen.

490. However, if the original Wizards art is chosen for the card, the actual card printed by PrintMTG and received by the customer displays the name of the original Wizards artist and the original Wizards CMI, even if the purchaser leaves the “Artist” and “Legal Text” fields blank at the time of ordering.

491. The PrintMTG Website also offers users the option to browse existing preconstructed decks (“Precons”) and elect to have them all printed at once, utilizing the same interface as the default “Order” experience provided above.

492. This functionality is repeated in greater or lesser part across all of the POD Storefronts.

493. The PrintMTG Website includes many disclaimers about how their cards are not legal for tournament play. However, like the ProxyKing Website, it also makes clear that these are fig leaves.

494. For example, although the PrintMTG Website states in the FAQ that “A fake is made to be mistaken for a real card (that’s not what we’re here for)”, under the heading “What makes a ‘good’ proxy,” they say “Prioritize readability: correct name/mana/cost, clean rules text, and art that doesn’t muddy the frame. **Picking the right printing/version is what makes proxies feel authentic.**” (emphasis added)

495. In description of the print process under “6) Finishing: Coating, cutting, and corners,” the PrintMTG Website states, “Finishing is one of the biggest factors in **how ‘professional’ cards feel.**” (emphasis added)

496. In the FAQ, in answer to the question “Do you print double-faced cards (DFCs/MDFCs)?”, the PrintMTG Website states “Yes. Double-faced cards are printed with both sides **so they play like the real game piece**. For gameplay, most players still sleeve DFCs (or



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

use helper cards) depending on how their group prefers to handle reveals and transforms." (emphasis added)[3]

497. In gameplay with genuine cards, players playing a double-faced card will use a "helper card" or a "token" which ships with the double-faced card. This "token" has the standard back, but a blank front so that the player can write in the information associated with the double-faced card. Then, when the player chooses to play the double-faced card, they will remove the token from their hand and replace it with the double-faced card, with the face of their choice showing.

498. In other words, there is no reason for a player to have a double-faced "proxy" card if there is no intent to fool the other players at the table into believing that the card is genuine. They would just continue to play the token card rather than replacing it with the counterfeit double-faced card.

499. The ProxyKing "Proxy Use Policy" is a transparent attempt to disavow any misconduct or fraud their customers might pursue with their product.

500. It purports to dissuade customer use of proxy cards.

501. In particular, the Proxy Use Policy avoids any mention of Counterfeit Cards or any intention to pass as real, merely reiterating best practices for using proxy cards in Magic play.

502. It does not attempt to explain why "unofficial playtest cards" would go to such lengths to appear real, or how customers should conduct themselves when in possession of such counterfeits.

503. On information and belief, this is intentional.

---

[3] Most of Wizards' cards in its Magic: The Gathering properties comprise a back and a face, the back consisting of Magic's standard card back and the face comprising a frame that defines two containers, one above showing card art and one below explaining the features or rules specific to a card. But Wizards publishes cards in many other forms. Some of these are "double-faced," meaning that the back of the card is used in conjunction with its face to express information to players. One effect enabled by "double sided" cards, for example, is a "transformation" achieved by flipping a card over. A double-sided card representing a werewolf might show a human on a card's face and the were-monster that the human transforms into on the card's back. Naturally, the identity of a double-faced card cannot be concealed by a player from an opponent just by placing the card face-down.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

504. CustomStickers is the Enterprise's most public face, comprising a website at https://customstickers.com/ (the "CustomStickers Website"), a Facebook page at https://www.facebook.com/customstickersus1 (the "CustomStickers FB"), an Instagram account at https://www.instagram.com/customstickers_us/ (the "CustomStickers IG"), and others.

505. YouStickers and CustomStickers are both Sticker Storefronts.

506. CustomStickers operates out of the Print Shop location.

507. CustomStickers identifies its contact phone number as the Print Shop Phone Number.

508. CustomStickers maintains a shop of ready-to-purchase stickers at https://customstickers.com/collections/sticker-library (the "Sticker Library"). Nearly every sticker in the Sticker Library is a copyrighted and trademarked design, including the logos for nearly every professional United States sports team, internationally recognized fashion house trademarks, licensed character designs from billion-dollar properties, and global consumer brands.

509. One of these stickers is a Magic design.

510. On information and belief, the Enterprise displays the Sticker Library prominently on the CustomStickers Website with the intent to signal to potential customers that they will print any design, whether the customer holds the copyright to that design or not.

511. CustomStickers keeps its promises. At no point during the process to order custom stickers does CustomStickers inquire as to whether the user owns the copyright on the chosen image.

512. CustomStickers does not acknowledge the illicit aspect of the Enterprise's conduct at all.

513. CustomStickers maintains an "Our Team" page where they list all the employees by first name, alongside a cartoon avatar picture.

514. Press releases issued from CustomStickers are attributed to CK Brands LLC.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

515. Because of the unity of operations amongst and between the Storefronts, every employee of CustomStickers is necessarily an employee of the PrintMTG Enterprise.

516. On information and belief, each employee listed on the Our Team page plays the described role not merely for the CustomStickers business, but for the PrintMTG Enterprise as a whole.

517. On information and belief, Defendants' legitimate sticker business does not generate sufficient revenue to support the overhead and equipment used in that business, which is paid for by the profit from the PrintMTG Enterprise's various infringements and other torts.

518. The Enterprise also operates a large and ever-changing array of purported review websites, from ArtLoveMagic.com to ZelaWelaKids.com. A non-exhaustive list of these sites is included in Exhibit 35.

519. Each of these sites is a Company-Controlled Review Website under the meaning of 16 C.F.R. § 465.6.

520. Many, if not most, of the Company-Controlled Review Websites are hosted at stolen domains.

521. After stealing these domains, the PrintMTG Enterprise populates them with content very similar to the content previously displayed on the website, but with their own information added.

522. For example, the website currently displayed at https://brownhornetfitness.com/ appears to be just what one would expect: a strength and fitness training gym with an emphasis on health and the community.

523. If, however, one scrolls down the page, there is a list of the most recent blog entries to the site, which are related to the printing of stickers, and not at all to fitness or health.

524. Further down the page, there is a section of the website that states, in prominent text, "We care about science-backed nutritional information." In that sentence, the word "information" links to the PrintMTG Website.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

525. And if one continues to scroll down to the bottom of the page, there is an article recommending CustomStickers.com for all your physical therapy clinic needs.

526. On information and belief, Brown Hornet Fitness did not choose to advertise CustomStickers and PrintMTG prominently on the home page of their business.

527. On information and belief, that content was placed there by the PrintMTG Enterprise.

528. Similarly, the website at https://heroesofchaos.net/ appears to be a fan site for the video game "Hollow Knight: Silksong."

529. However, the "Reviews" section features reviews that appear to describe a marketing course or website from users with job titles like "Junior Lorem Isum."

530. On information and belief, "Lorem Isum" is a reference to the placeholder text "Lorem Ipsum" and is not a real job title belonging to a real person.

531. Immediately below these "Lorem Isum" reviews, the page displays the text "For the best Magic Cards, please visit ProxyKing.biz. Magic the Gathering is a trading card game based on a fantasy world. To learn how to make a baseball card, please visit printcards."

532. In this sentence, the words "Magic Cards" link to the ProxyKing Website, and the words "make a baseball card" link to PrintCards.

533. Further, the "News" section of the website consists primarily of reviews for custom vinyl stickers and counterfeit Magic cards.

534. As with Brown Hornet Fitness, on information and belief, Heroes of Chaos did not choose to advertise the PrintMTG Enterprise on its website.

535. On information and belief, that content was placed there by the PrintMTG Enterprise.

**D. The Conduct of the Members of the PrintMTG Enterprise**

536. On information and belief, each Individual Defendant is aware of and has agreed to participate in the PrintMTG Enterprise and the scope of its unlawful conduct.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

537. The Print Shop space is not exceptionally large, and images and videos posted to social media make it clear that employees working on the shop floor can see the entire production space.

538. The Print Shop owns and operates a single HP Indigo digital printing press for all the Enterprise's print production, whether of stickers or of Counterfeit Cards.

539. This shared usage means that it would be very difficult to segregate the Counterfeit Storefront printing from the Sticker Storefront printing, as would be required to hide the existence of the Counterfeit Storefronts from CustomStickers employees working in design, production, and/or fulfillment.

540. The Sticker Storefronts and Counterfeit Storefronts frequently share contact methods. For example, the phone number 720-803-1314 has been listed as the contact number for both PrintMTG and YouStickers.

541. Such shared contact information means that anyone monitoring or responding to customer communications, such as employees working in customer service or design roles, for the Sticker Storefronts would also be aware of customer communications for the Counterfeit Storefronts.

542. Defendant CK Brands is both the commercial tenant on the Print Shop and the merchant description appearing on customer statements for purchases through the Counterfeit Storefronts.

543. Such shared finances and operational organization means that anyone managing the Sticker Storefronts' books and infrastructure, such as business analysts, accountants, or software engineers, would necessarily be aware of the revenue and expenses associated with the Counterfeit Storefronts' activity.

544. Further specifics are given below.

**1. Dunn Defendants**

545. Defendants Ryan and Melissa Dunn direct and control the overall operations of the Enterprise through their ownership and operation of CK Brands and CK Cards.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

546. As detailed above, CK Brands is the commercial tenant on the Print Shop, the merchant descriptor for purchases made through Enterprise websites, and the entity which issues press releases for the Sticker Storefronts.

547. On information and belief, Ryan also materially contributes to the expanding scope of the Enterprise's business operations through his pseudonymous, fraudulent, and deceptive marketing campaign under the names "John Monsen" and "Kit Yarrow," among others.

548. Defendant Tanner Dunn conducts the affairs of the Enterprise through the formation and operation of Entity Defendants Cardcrafters and ProxyParadise as well as non-defendant entity PokemonProxy. Tanner also conducts the affairs of the Enterprise by registering and maintaining Enterprise websites and domains such as TrinketKingdom.com.

549. Defendant Jarrett Dunn conducts the affairs of the Enterprise through the formation and operation of Entity Defendant JR Cards, as well as through his role as the COO of CustomStickers.

550. Defendant Grace Haroldsen Dunn conducts the affairs of the Enterprise through her role as the Business Manager of CustomStickers.

551. Defendant Parker Haroldsen provides operational support to the Enterprise in his role in Fulfillment at CustomStickers.

552. Defendant Ethan Dunn conducts the affairs of the Enterprise through his role as Production Lead at CustomStickers.

553. Defendant Raili Dunn Lewis conducts the affairs of the Enterprise through her role in New Channel Development at CustomStickers.

554. On information and belief, Raili has also been instrumental in the development of the Enterprise's deceptive and fraudulent marketing scheme.

555. Defendant Kosner Lewis conducts the affairs of the Enterprise through his role as the General Manager of CustomStickers.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

556. Defendant Kazdin Lewis provides operational support to the Enterprise through his role in Fulfillment at CustomStickers.

557. Defendant Colin Pratt Dunn allows the Enterprise to conduct business from and through real property he owns or has owned. Colin also has provided operational support to the Enterprise through his role as a Software Engineer at CustomStickers, through the formation and operation of Defendant MTGApp, and, on information and belief, as a contributing author on Enterprise websites.

558. Defendant Joseph Michael Dunn provides operational support to the Enterprise through his role in Fulfillment at CustomStickers.

559. Defendant Maren Dunn conducts the affairs of the Enterprise through her role as the Customer Lead at CustomStickers.

560. Defendant Chris Dunn, together with Maren, allows the Enterprise to conduct business from and through real property they own or have owned, with, on information and belief, the specific intent to facilitate its unlawful conduct.

**2. Monsen Defendants**

561. Defendant Michael Monsen conducts the affairs of the Enterprise through his role as the Director of Production at CustomStickers.

562. Defendant Daniel Monsen provides operational support to the Enterprise through his role in Fulfillment at CustomStickers.

563. Defendant Keltsie Rencher provides operational support to the Enterprise through her role as a Shipping Assistant at CustomStickers.

564. Defendant Karen Monsen provides operational support to the Enterprise through her role in Customer Service at CustomStickers.

**3. Production Defendants**

565. On information and belief, each of the Production Defendants works or worked in the Enterprise’s production operations at the Print Shop, printing, finishing, or assisting others in



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

printing, finishing or performing quality control on the Counterfeit Cards and the Enterprise's other products.

566. On information and belief, the Production Defendants perform their work for the Enterprise under the direction of Director of Production Michael Monsen and Production Lead Ethan Dunn.

567. Defendant Cody Chamberlain runs or has run the Etsy shop at https://www.etsy.com/shop/ProxyStudiosUSA which sells or has sold Counterfeit Cards for the benefit of the Enterprise, including in conjunction with non-defendant entity PokemonProxy operated by Defendant Tanner Dunn.

568. On information and belief, Cody also conducts the affairs of the Enterprise through his operation of the Instagram accounts @theproxystudios and @pokemonproxy.

569. Cody further conducts the affairs of the Enterprise through his operation of the Nerdventure storefront.

570. Defendant Perry Doe (Doe #02) provides operational support to the Enterprise through his role in Production at CustomStickers.

571. Defendant Daxton Macey provides operational support to the Enterprise through his role in Production and Design at CustomStickers.

### 4. Designer Defendants

572. On information and belief, each of the following Defendants procures, creates or created, and/or edits designs and digital files, or assisted others in the procurement or creation of the designs and digital files used in the Enterprise's products, including the Counterfeit Cards.

573. Defendant Brynna Higginson conducts the affairs of the Enterprise through her role as the Design Manager at CustomStickers. On information and belief, all the Designer Defendants perform their work for the Enterprise under Brynna's direction and oversight.

574. Designer Defendants Elle Porter, Garrett Lyon, Alie Mueller, Kenzi Fish, Maxwell Mangum, Zoe Doe (Doe #03), and Kosuke Doe (Doe #04) provide operational support to the Enterprise through their roles as Designers at CustomStickers.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**5. Fulfillment Defendants**

575. On information and belief, each of the Fulfillment Defendants participates in the conduct of the Enterprise by receiving, producing, assembling, packing, and shipping orders placed by the Enterprise's customers, including Counterfeit Cards.

576. Defendant Rob Doe (Doe #05) conducts the affairs of the Enterprise through his role as the Shipping Lead at CustomStickers.

577. Defendant Adam Weinert conducts the affairs of the Enterprise through his role in Shipping and Fulfillment at CustomStickers.

578. On information and belief, all the Fulfillment Defendants perform their work for the Enterprise under Rob Doe (Doe #05) and Adam Weinert's direction and oversight.

579. Defendant Anthony Johnson provides operational support to the Enterprise through his role in the Warehouse at CustomStickers. Anthony also provides revenue and further conducts the affairs of the Enterprise through his operation of non-defendant Minifigs.biz, which produces counterfeit LEGO minifigs.

580. Defendant Jessica Doe (Doe #06) conducts the affairs of the Enterprise via the management of the CustomStickers Etsy channel.

581. Defendants Arletta Esqueda, Jacqueline Doe (Doe #07), Joseph Doe (Doe #10), Rylan Doe (Doe #08), and Sita Doe (Doe #09) provide operational support to the Enterprise through their roles in Fulfillment at CustomStickers.

**6. Professional Services Defendants**

582. On information and belief, each of the Professional Services Defendants has contributed to the operational success of the Enterprise through providing skilled or specialized business services.

583. Defendant Braxton Batty provides operational support to the Enterprise via his role as a Certified Public Accountant at CustomStickers.

584. Defendant C. Dennis Allen provides operational support to the Enterprise via his role as a Senior Business Analyst at CustomStickers.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

585. Defendant Brandon Doe (Doe #12) provides operational support to the Enterprise via his role in Statistical Analysis at CustomStickers.

586. Defendant Amber Doe (Doe #11) provides operational support to the Enterprise via her role in Administration at CustomStickers.

**7. Marketing Defendants**

587. On information and belief, each of the Marketing Defendants creates or produces content or marketing materials, including but not limited to social media marketing content, for the Enterprise, as well as collaborating on or contributing to the Enterprise's overall social media strategy, including but not limited to the deceptive and unfair practices related to the Company-Controlled Review Websites.

588. On information and belief, all of the Marketing Defendants perform their work for the Enterprise under the direction and oversight of Defendant Raili Dunn Lewis.

589. Defendant Cultural-Row23 provides operational support to the Enterprise via the operation of the Reddit user account /u/Cultural-Row23.

590. Defendant Tom Doe (Doe #14) provides operational support to the Enterprise via his role as the "Sticker Inventor" at CustomStickers.

591. Defendants Katelyn Smith, Charlee Galbraith, Andy Doe (Doe #13), and "Kit Yarrow" provide operational support to the Enterprise via their roles in Marketing for CustomStickers.

**8. Entity Defendants**

592. Defendant CK Brands is the entity through which all of the Enterprise's business is currently directed; it holds the lease on the Print Shop, it issues press releases on behalf of the Enterprise, and it supplies the merchant designation for purchases made through the Enterprise.

593. Defendant Ryan Dunn is the manager and sole member of Defendant CK Cards. On information and belief, the Enterprise has transacted business via Defendant CK Cards in the past and/or continues to do so. On information and belief, CK Cards is an alter ego of Defendant Ryan Dunn.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

594. Defendant Jarrett Dunn is the manager and sole member of Defendant JR Cards. On information and belief, the Enterprise has transacted business via Defendant JR Cards in the past and/or continues to do so. On information and belief, JR Cards is an alter ego of Defendant Jarrett Dunn.

595. Defendant Tanner Dunn is the sole member of Defendant ProxyParadise. The Enterprise has transacted business via Defendant ProxyParadise in the past via its website at https://www.proxyparadise.com. On information and belief, ProxyParadise is an alter ego of Defendant Tanner Dunn.

596. Defendant Tanner Dunn is the sole member of Defendant Cardcrafters. On information and belief, the Enterprise has transacted business via Defendant Cardcrafters in the past via its Etsy shop “CardCraftersProxy.” On information and belief, Cardcrafters is an alter ego of Defendant Tanner Dunn.

597. Defendants Ryan Dunn and Colin Dunn are the only members of Defendant MTGApp. The Enterprise has transacted business via MTGApp in the past via its website at https://www.mtg.app.

598. Defendants Ryan Dunn and Colin Dunn are the managers of Defendant Black Walnut. Defendant Black Walnut owns real property which it has contributed to the Enterprise for use in its operations, including but not limited to 1487 N 150 E, Springville, UT 84663.

599. On information and belief, Defendant Shelikof is used to record and distribute the Dunn Defendants’ share of the Enterprise’s revenue.

**E. Defendants’ Counterfeiting and Bootlegging**

600. Defendants list more than 2000 items for sale in the category of “MTG Proxy Cards,” including a mix of individual cards and sets, sortable by popularity, price, and rating.

601. All of the “MTG Proxy Cards” sold by Defendants are counterfeits: they closely resemble the authentic cards that they copy, including original art and the glyphs signifying the cards’ set; and they include Wizards’ copyright management information and attributions and (an attempt at) Wizards’ anticounterfeiting features.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

602. Wizards published and registered more than 340 of its individual Magic sets between 1993 and 2022.

603. Of the published and registered Magic sets, on information and belief, the Enterprise sells Counterfeit Cards duplicating cards from more than half, accounting for 191 of the registered sets.

604. Of the 191 sets of Magic cards subject to copyright registrations owned by Wizards and also counterfeited by the Enterprise, 123 reflect counterfeits of sets that were registered by Wizards prepublication or within three months of first publication, reflected in Exhibits 31 and 33.

605. Of the 191 sets of Magic cards subject to copyright registrations and also counterfeited by the Enterprise, 68 reflect counterfeits of sets that were registered by Wizards but more than three months after first publication, reflected in Exhibits 32 and 34.

606. Many of the registered sets are infringed by one or a few cards sold by the Enterprise; and several of the registered sets are infringed by many of the cards sold by the Enterprise.

607. For example, the Enterprise sells 68 cards from the Modern Horizons 2 set, which was registered as VAu 1441367 in 2021 by Wizards; 20 cards from Zendikar registered as VA 1707495 in 2009, and 46 cards from the Limited Edition Beta set, published in 1993 and reprinting cards registered in Limited Edition Alpha as VA 596507.

608. From these clusters of sales, and from viewing the “popularity” of Defendants’ listings, it can be inferred that the Enterprise focuses on selling high-value utility cards: the “dual lands” from Beta (and Revised), the “fetch lands” from Zendikar, the reprinted staples from Modern Horizons 2.

609. In the same way that currency counterfeiters counterfeit $20 bills rather than $100 bills, the Enterprise does most of its business counterfeiting cards that are not particularly rare but see high demand and circulation, and thus, that don’t inspire collectors or card shops to screen every card critically.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

610. The Enterprise duplicates entire cards when it commits copyright infringement, including duplicating the following Wizards trademarks: Reg. Nos. 1919923, 2834808, 4372679, 4383290, 5045728, 5191296 (the MAGIC THE GATHERING word mark that appears on every card back); Reg. No. 1969759 (the five color figurative mark that appears on every card back); Reg. Nos. 5317915, 5643885, and 5546136 (the figurative "Planeswalker Symbol" trademark that appears within anti-counterfeiting features on many cards published since 2014); and Reg. Nos. 4698054, 4447983, 4447982, 4447981, and 4447980 (the figurative "Mana Symbols" trademarks, where at least one of these symbols appears prominently on the face of most cards).

611. The Enterprise is aware that, when it duplicates entire Magic cards, it is committing copyright and trademark infringement.

612. For example, the Enterprise duplicates the legal notices printed on the face of authentic Magic cards onto its Counterfeit Cards.

613. The Enterprise does not merely automate card duplication; it goes to great lengths to match the text on the counterfeits to the authentic article, including the legal notices.

## V. CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

**(Direct Copyright Infringement, 17 U.S.C. §§ 106 and 501, Against All Defendants)**

614. Wizards repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

615. The prevalence of counterfeiting in the Magic customer ecosystem is a continuous drag on the appeal of collecting and trading authentic Magic cards.

616. Each card contains original artwork created by an artist engaged by Wizards for the purpose of attracting fans to purchase, trade, and play Magic with authentic cards.

617. Without authorization, Defendants reproduced, distributed, publicly displayed (including in Storefront listings), and prepared derivative works of the copyrighted artwork, card



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

frames, flavor text, and other original expression in the registered works identified in Exhibits 31 through 34, in violation of 17 U.S.C. § 106(1), (2), (3), and (5).

618. For each copyrighted work infringed whose registration was effective before the infringement commenced or within three months of first publication (the works identified in Exhibits 31 and 33, and those works identified in Exhibits 32 and 34 whose registrations were effective before any of Defendants' infringement of that work of which Wizards is aware), Wizards is entitled to statutory damages of up to $150,000 for willful infringement, or in such other amount as may be proper under 17 U.S.C. § 504(c).

619. Alternatively, Wizards is entitled to disgorgement of the Enterprise's profits from the sale of infringing cards, as well as its actual damages.

620. Wizards is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

621. In addition, Wizards has sustained and will continue to sustain substantial, immediate, and irreparable injury as a result of Defendants' acts and conduct, for which there is no adequate remedy at law. Wizards is informed and believes, and on that basis alleges, that unless enjoined and restrained by this Court, Defendants will continue to infringe Wizards' copyrights. Wizards is entitled to injunctive relief under 17 U.S.C. § 502 to restrain and enjoin Defendants' continuing unlawful conduct, and to an order under 17 U.S.C. § 503 impounding the infringing cards and the articles used to make them.

## SECOND CAUSE OF ACTION

**(Vicarious and Contributory Copyright Infringement, 17 U.S.C. § 101 *et seq.*, Against the Entity Defendants, Ryan Dunn, Melissa Dunn, Jarrett Dunn, Kosner Lewis, and Michael Monsen)**

622. Wizards repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

623. Defendants intentionally induced, and provided services tailored to, the illegal reproduction and/or subsequent sales of counterfeit Magic cards alleged herein.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

624. Defendants' intent is shown by specific acts of inducement and by services tailored to infringement. Defendants actively encourage infringement by advertising that their cards are made to duplicate authentic Magic cards as closely as possible. Defendants also provide services tailored to infringement: the POD Storefronts' Custom Card Maker automatically fills an order with Wizards' copyrighted artwork and artist information, and suggests the Wizards copyright notice, just as they would appear on the authentic card. Those functions have no substantial noninfringing use.

625. Wizards is informed and believes and thereon alleges that Defendants are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

626. In particular, Ryan Dunn and Melissa Dunn (through their ownership and management of CK Brands), Jarrett Dunn (Chief Operating Officer), Kosner Lewis (General Manager), and Michael Monsen (Director of Production) each had the right and ability to stop the infringing printing and sales at the Print Shop, and each received a direct financial benefit from them.

627. As a result, Defendants are vicariously and contributorily liable for the direct infringement committed by the Entity Defendants and by the customers who use Defendants' ordering tools to cause infringing copies to be made.

628. Defendants' actions were and are intentional, willful, wanton, and performed in disregard of Wizards' rights.

629. Wizards is entitled to injunctive relief pursuant to 17 U.S.C. § 502. Wizards has no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) Wizards' copyrights are unique and valuable property which have no readily determinable market value, (b) Defendants' continued infringement harms Wizards such that Wizards could not be made entirely whole by any monetary award, and (c) Defendants' wrongful conduct, and



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the resulting damage to Wizards, is ongoing, and is perpetuated with every use of their Counterfeit Card design tools.

630. Wizards has been and will continue to be damaged, and Defendants have been unjustly enriched, by Defendants' unlawful infringement of Wizards' copyrighted works. Wizards is entitled to its actual damages and Defendants' profits, in amounts to be proven at trial, pursuant to 17 U.S.C. § 504(b).

631. Alternatively, Wizards is entitled to statutory damages of up to $150,000 per infringed work for willful infringement pursuant to 17 U.S.C. § 504(c)(2).

632. Wizards is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

## THIRD CAUSE OF ACTION

**(Civil RICO, 18 U.S.C. § 1962(a), (c), & (d), Against the RICO Defendants)**

633. Wizards repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

634. This Cause of Action is asserted against the Entity Defendants and the following Individual Defendants (collectively, the "RICO Defendants"): Ryan Dunn, Melissa Dunn, Tanner Dunn, Jarrett Dunn, Grace Haroldsen Dunn, Ethan Dunn, Raili Dunn Lewis, Kosner Lewis, Colin Dunn, Christopher Dunn, Maren Loflin Dunn, Michael Monsen, John Doe #01 a/k/a "John Monsen," Cody Chamberlain, Brynna Higginson, Zoe Doe (Doe #03), Rob Doe (Doe #05), Jessica Doe (Doe #06), Jacqueline Doe (Doe #07), Anthony Johnson, Charlee Galbraith, Andy Doe (Doe #13), and Kit Doe (Doe #15). In this Cause of Action, "Defendants" refers to the RICO Defendants.

### A. The Enterprise

635. As described above, the PrintMTG Enterprise consists of dozens of individuals and entities who coordinate their efforts in furtherance of the common purpose of making, marketing, distributing, and supporting the Counterfeit Cards and engaging in other unlawful conduct.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

636. As alleged above, and as disclosed on the CustomStickers Our Team page, each of the Individual Defendants plays a role in the PrintMTG Enterprise, actively facilitating and/or participating in its tortious and criminal activity.

637. On information and belief, each of the RICO Defendants is aware of and has specifically agreed to facilitate or participate in the PrintMTG Enterprise's tortious and criminal activity.

638. Based on their stated roles as described on Enterprise websites, each of the following individual RICO Defendants participated in the operation or management of the Enterprise. Ryan Dunn and Melissa Dunn direct the Enterprise through CK Brands and CK Cards, and Ryan also directs the Enterprise's deceptive marketing through the "John Monsen" and "Kit Yarrow" personas. Jarrett Dunn (Chief Operating Officer), Grace Haroldsen Dunn (Business Manager), and Kosner Lewis (General Manager) manage the Enterprise's day-to-day operations. Michael Monsen (Director of Production) and Ethan Dunn (Production Lead) direct the printing of Counterfeit Cards at the Print Shop. Brynna Higginson (Design Manager) and Zoe Doe (Doe #03) (Design Lead) direct the creation of the designs and digital files used to print Counterfeit Cards. Rob Doe (Doe #05) (Shipping Lead) and Jacqueline Doe (Doe #07) (Fulfillment Manager) direct the packing and shipping of Counterfeit Card orders. Raili Dunn Lewis directs the Marketing Defendants, and together with Charlee Galbraith, who runs the Enterprise's content and SEO playbook, and Andy Doe (Doe #13), who oversees its marketing and automation, directs the Enterprise's deceptive marketing and domain hijacking. John Doe #01 a/k/a "John Monsen" and Kit Doe (Doe #15) operate the personas through which the Enterprise publishes its Company-Controlled Review Websites. Tanner Dunn, Cody Chamberlain, Anthony Johnson, and Jessica Doe (Doe #06) operate Enterprise Storefronts and sales channels, including ProxyParadise, Cardcrafters, PokemonProxy, TrinketKingdom.com, ProxyStudiosUSA, Nerdventure.com, Minifigs.biz, and the CustomStickers Etsy shop. Colin Dunn, Christopher Dunn, and Maren Loflin Dunn manage or hold interests in the Entity Defendants through which the Enterprise holds property and records and distributes its revenue,



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

including MTGApp, Black Walnut, and Shelikof, and have made real property available for the Enterprise's use.

639. Indeed, the PrintMTG Enterprise conducts that tortious and criminal activity openly, such that it would be impossible for any of the RICO Defendants to be unaware of it or for their participation in and/or facilitation of that activity to be unintentional.

640. Defendants have thus agreed to work together with the common purpose of engaging in the predicate acts described below.

641. Defendants have engaged in the conduct described herein for years.

642. Per the agreement among Defendants, Defendants' conduct will continue into the future.

643. For purposes of the RICO statute, Defendants thus constitute an association-in-fact – the PrintMTG Enterprise.

644. As alleged below, Defendants conduct the PrintMTG Enterprise through a pattern of racketeering activity.

645. In the alternative, Defendant CK Brands is an enterprise that Defendants other than CK Brands conduct through a pattern of racketeering activity.

**B. The Conduct of the Enterprise**

646. Although the PrintMTG Enterprise is large in size and scope, the conduct of its members underlying this action is focused on a specific and well-coordinated purpose: counterfeiting and copyright infringement.

647. That business is conducted through the following predicate acts:

**C. Predicate Acts**

**1. Criminal Copyright Infringement**

648. Defendants' conduct constitutes criminal copyright infringement under 17 U.S.C. § 506(a) and 18 U.S.C. § 2319, which is racketeering activity under 18 U.S.C. § 1961(1)(B).

649. Defendants infringed on Wizards' copyrights for their commercial advantage.

650. Defendants' infringement was willful, knowing, and intentional.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

651. Defendants infringed on Wizards' copyrights for their private financial gain.

652. Defendants have committed multiple acts of criminal copyright infringement, over a significant period of time, with each instance of counterfeiting and unlicensed reproduction being a separate instance of criminal copyright infringement.

653. Defendants have also engaged in extensive criminal copyright infringement of other intellectual property, including Star Wars, Pokémon, and Lorcana.

**2. Trafficking in Counterfeit Goods**

654. Defendants have intentionally trafficked in goods and knowingly used counterfeit marks on or in connection with such goods, in violation of 18 U.S.C. § 2320(a)(1), which is racketeering activity under 18 U.S.C. § 1961(1)(B).

655. As alleged above, the marks Defendants apply to their Counterfeit Cards are identical to or substantially indistinguishable from the Wizards Trademarks, are applied to the goods for which those marks are registered, and are likely to cause confusion, mistake, or deception.

656. Each sale and shipment of Counterfeit Cards bearing the Wizards Trademarks constitutes a separate act of trafficking in counterfeit goods.

**3. Mail Fraud**

657. Defendants have also committed mail fraud in violation of 18 U.S.C. § 1341.

658. As alleged above, Defendants' conduct involves the creation and sale of counterfeit Magic cards.

659. In addition, Defendants engage in the creation and sale of counterfeit Pokémon and Lorcana cards.

660. Defendants' creation and sale of the Counterfeit Cards is in service of executing a scheme to defraud.

661. On information and belief, based on Defendants' prior use of the Heritage Auctions address, Defendants have sold and/or attempted to sell Counterfeit Cards on the secondary market, presenting them as genuine cards.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

662. On information and belief, Defendants know and intend that their Counterfeit Cards will be used in Magic tournaments in which they are banned.

663. On information and belief, Defendants know and intend that such use will allow their customers to obtain money or prizes based on their performance in said tournaments.

664. Indeed, as alleged above, Defendants specifically provide their customers with tips for using Counterfeit Cards in tournament play.

665. On information and belief, Defendants know and intend that some number of their Counterfeit Cards will be sold as genuine on the secondary market.

666. On information and belief, Defendants rely on such tournament use and secondary market sales to drive demand for their Counterfeit Cards.

667. Defendants ship their Counterfeit Cards through the postal service and/or private or commercial carrier, including to purchasers in this District.

668. By virtue of the foregoing, Defendants have committed multiple acts of mail fraud.

**4. Wire Fraud**

669. Defendants have also committed wire fraud in violation of 18 U.S.C. § 1343.

670. As alleged above, Defendants have made pervasive use of the internet in carrying out the scheme to defraud alleged above, in violation of the wire fraud statute.

671. Defendants also accept payment for their Counterfeit Cards by wire.

672. In addition, as alleged above, Defendants have engaged in numerous false statements regarding their business – even their otherwise legitimate sticker business – in an attempt to sway consumers to purchase from them.

673. Defendants have placed fraudulent reviews on the internet, purporting to “compare” different arms of their own business without disclosing to consumers that both the compared websites and the reviewing website were affiliates.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

674. Defendants have done so in order to deceive prospective customers into believing that CustomStickers, YouStickers, and other sticker-printing arms of their Enterprise are competitors, rather than the same business operating under different names.

675. Defendants have obtained money by virtue of their scheme to defraud.

676. By virtue of the foregoing, Defendants have committed multiple acts of wire fraud.

677. Indeed, Defendants' fraud is so pervasive that even their sales of non-infringing, otherwise unobjectionable sticker products are a result of fraud.

678. Moreover, on information and belief, Defendants' sticker business is intended to operate as a cover for their Counterfeit Card business by providing a "legitimate" cover for their print organization.

679. Defendants' fake-review network also promotes the Counterfeit Storefronts, including through "Kit Yarrow" articles on KrakenOpus.com that rank ProxyKing.biz, PrintMTG.com, and ProxyMTG.com against one another without disclosing their common ownership, and it conceals the common control of the Counterfeit Storefronts.

**5. Money Laundering**

680. On information and belief, Defendants have conducted financial transactions using the proceeds of the predicate acts alleged above.

681. On information and belief, Defendants have engaged in such transactions with the intent to promote the carrying out of such activities.

682. For instance, on information and belief, Defendants have used the proceeds of their unlawful activity to pay expenses of the PrintMTG Enterprise.

683. In addition, Defendants have purchased property, including card stock, ink, and printers, used to conduct or facilitate their unlawful activity.

684. On information and belief, based on Wizards' knowledge of the relevant supply chains, at least some of Defendants' suppliers of such property are located outside of the United States.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

685. On information and belief, such transactions have involved the transfer of funds from a place inside the United States to or through a place outside the United States.

686. By virtue of the foregoing, Defendants have violated 18 U.S.C. § 1956(a)(1)(A)(i), (a)(2)(A), and (a)(3)(A).

687. On information and belief, Defendants have, within the United States, engaged in the deposit, withdrawal, transfer, or exchange of the proceeds of their criminal conduct alleged above, in which the value of such proceeds was greater than $10,000.00.

688. By virtue of the foregoing, Defendants have violated 18 U.S.C. § 1957(a).

**6. RICO Violations**

689. By virtue of the foregoing, Defendants have violated 18 U.S.C. § 1962(a) by using income derived from their pattern of racketeering activity in the operation of the PrintMTG Enterprise and/or CK Brands. Defendants reinvested that income to acquire the Print Shop's printing equipment and supplies, which allowed Defendants to improve the quality of their counterfeit cards and thereby increase the harm to Wizards.

690. In addition, the reinvestment allowed Defendants to launch new Counterfeit Storefronts on a rolling basis. That reinvestment caused Wizards injury distinct from the injury caused by the predicate acts themselves, including the repeated cost of identifying and pursuing each new Storefront.

691. By virtue of the foregoing, Defendants have violated 18 U.S.C. § 1962(c) by participating in the operation of the PrintMTG Enterprise and/or CK Brands through a pattern of racketeering activity.

692. By virtue of the foregoing, Defendants have violated 18 U.S.C. § 1962(d) by conspiring to violate the provisions of 18 U.S.C. §§ 1962(a) and (c).

693. As alleged above, Wizards has been significantly damaged by Defendants' pattern of racketeering activity.

694. Wizards has incurred significant expense as a result of Defendants' conduct.

695. Wizards has lost significant revenue as a result of Defendants' conduct.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

696. Among other things, and on information and belief, the presence of the Counterfeit Cards in the market has directly reduced demand for Wizards' genuine Magic cards, both by providing prospective purchasers with another option for purchasing such cards, thereby displacing Wizards' own sales, and by negatively impacting the secondary market for genuine Magic cards, which also serves to further reduce demand.

697. As such, Wizards is entitled to an award of its damages, in an amount to be proven at trial, treble damages, and attorneys' fees as allowed under 18 U.S.C. § 1964(c).

698. In addition, Wizards is entitled to injunctive relief as authorized under 18 U.S.C. § 1964(a), directing Defendants to forever cease making, marketing, or selling their Counterfeit Cards.

## **FOURTH CAUSE OF ACTION**

**(Trademark Counterfeiting and Trademark Infringement in Violation of 15 U.S.C. § 1114)**

699. Wizards repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

700. Wizards is the owner and holder of all intellectual property rights and interests in its games, including registered trademarks.

701. Wizards' registered trademarks, as described above, include word marks capturing its name, WIZARDS OF THE COAST, numerous combined marks capturing WIZARDS OF THE COAST, MAGIC, and MAGIC THE GATHERING, and numerous figurative marks including the Planeswalker symbol, the five colors of mana arranged in a circle, and each one of the glyphs representing the five classical mana symbols (the Wizards Trademarks identified above).

702. Wizards owns the Wizards Trademarks and advertises, markets, offers, distributes, and sells its products using the Wizards Trademarks. Wizards uses the Wizards Trademarks to distinguish its products from other trading card games and to protect the integrity of its printed products.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

703. Because of Wizards' long, continuous, and exclusive use of the Wizards Trademarks, these Trademarks are understood by players, collectors, retailers, and the consuming public to signify products from Wizards.

704. Every authentic Magic trading card bears multiple Wizards Trademarks. A single card displays the Wizards Trademarks on its face and on its back and displays them in a manner that identifies them as trademarks, including through the "TM" symbol printed on the card and through the notice line printed on the face of most cards, which for many of the infringed cards identifies the card as subject to the copyright and trademark rights of Wizards.

705. Wizards Trademarks are incorporated into the physical anti-counterfeiting features of authentic Magic cards, including the authentication hologram present on the face of rare and mythic rare cards. Those features exist for a purpose: they permit players, collectors, retailers, grading and authentication services, and tournament officials to distinguish a genuine Wizards card from a counterfeit.

706. Defendants manufacture, print, import, advertise, offer for sale, distribute, and sell counterfeit Magic cards in the United States as described herein. Each Counterfeit Card reproduces the Wizards Trademarks that appear on the authentic card it copies. The marks Defendants apply are identical to, or substantially indistinguishable from, the Wizards Trademarks as registered, and Defendants apply them to the very goods for which those marks are registered. Defendants' marks are therefore counterfeit marks within the meaning of 15 U.S.C. §§ 1116(d)(1)(B) and 1127.

707. Defendants reproduce the anti-counterfeiting features of authentic Magic cards, including the authentication hologram and the trademark printed within the hologram. The reproduction of a device whose only function is to authenticate a product serves no purpose except to cause the counterfeit article to be accepted as genuine.

708. Defendants reproduce Wizards' own trademark indicia. Defendants print the "TM" symbol where it appears attached to the registered trademark MAGIC THE GATHERING on the back of every card, and reproduce on the face of most of their Counterfeit Cards the same



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

notice line that Wizards prints on its products, which for most cards states that the card is subject to the copyright and trademark rights of Wizards. Defendants thus copy not only the Wizards Trademarks but Wizards' own copyright management information and printed assertion of ownership of those marks, so that every Counterfeit Card affirmatively misrepresents to each person who later comes into contact with it that the card originated from Wizards.

709. Defendants advertise, market, and offer their Counterfeit Cards for sale on their website using photographic images of the Counterfeit Cards themselves. The images display the Wizards Trademarks, and each such listing is a use in commerce of the Wizards Trademarks in connection with the sale, offering for sale, distribution, and advertising of goods, and each such image is a reproduction, counterfeit, copy, and colorable imitation of the Wizards Trademarks as applied to advertisements intended to be used in commerce under the meaning of 15 U.S.C. § 1114.

710. Defendants prominently market their primary web store, at ProxyKing.biz, with an image that contains Wizards' registered trademark, the Planeswalker symbol, which is also a use in commerce of the Wizards Trademarks in connection with the sale, offering for sale, distribution, and advertising of goods (last accessed 08-21-2026).

711. Defendants manufacture their Counterfeit Cards to be indistinguishable from authentic Magic cards, and they market them on that basis. Defendants say to prospective purchasers that their Counterfeit Cards are of a quality sufficient to be mistaken for genuine Wizards product.

712. Defendants' unauthorized use of the Wizards Trademarks is likely to cause confusion, to cause mistake, and to deceive as to the source, origin, sponsorship, approval, and authenticity of Defendants' goods. That some of Defendants' immediate purchasers may



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

understand that they are buying counterfeits neither excuses Defendants' conduct nor limits the confusion that conduct causes. Defendants' Counterfeit Cards are built and sold to deceive those who encounter them after the initial sale.

713. Defendants intend these results. Defendants know their cards are counterfeit; they identify by name the Wizards sets their counterfeits reproduce; they replicate the anti-counterfeiting features whose only function is to signal authenticity; they replicate Wizards' trademark and copyright notice indicia; and they assure their customers that the counterfeits are of a quality sufficient to pass as genuine. Defendants' use of the Wizards Trademarks is knowing, intentional, and willful.

714. Wizards has not licensed, authorized, or otherwise consented to Defendants' use of the Wizards Trademarks in any respect.

715. Defendants Ryan Dunn, Melissa Dunn, Jarrett Dunn, Grace Haroldsen Dunn, Kosner Lewis, Michael Monsen, Ethan Dunn, Brynna Higginson, and Zoe Doe (Doe #03) personally directed and authorized Defendants' use of the Wizards Trademarks on the Counterfeit Cards, and the Production Defendants and the Designer Defendants personally carried out that use by designing and printing the Counterfeit Cards.

716. As a result of Defendants' wrongful conduct, Wizards is entitled to recover its actual damages, Defendants' ill-gained profits attributable to the infringement, treble damages, and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and (b). Alternatively, Wizards is entitled to statutory damages under 15 U.S.C. § 1117(c) for Defendants' use of counterfeit marks.

717. Wizards is further entitled to injunctive relief, including an order impounding and directing the destruction of all counterfeit and infringing products, printing plates, dies, digital files, packaging, and promotional materials in Defendants' possession, custody, or control pursuant to 15 U.S.C. §§ 1116 and 1118. Wizards has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) the Wizards Trademarks are unique and valuable properties that have no readily-determinable market value; (b) Defendants' counterfeiting and infringing activities constitute harm to Wizards and Wizards' reputation and



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

goodwill such that Wizards could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the counterfeit and infringing materials; (d) Defendants' Counterfeit Cards, once sold, circulate indefinitely in the secondary market for Magic cards, so that each sale produces continuing and compounding deception that no accounting can measure or undo; and (e) the resulting irreparable harm to Wizards, due to Defendants' wrongful conduct, is likely to be continuing.

**FIFTH CAUSE OF ACTION**

**(Violation Of The Washington Consumer Protection Act, RCW 19.86.010, et seq.)**

718. Wizards repeats and realleges the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

719. Defendants' practices occurred in trade or commerce, as they sell their Counterfeit Cards across the country and the globe, and, in particular, to Washington state.

720. As alleged herein, these practices are manifestly and willfully unlawful.

721. Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Magic cards, and, indeed, of all their counterfeit products, constitute unfair and deceptive acts or practices in the conduct of trade or commerce, in violation of RCW 19.86.020. Defendants' conduct deceives consumers about the source, authenticity, and sponsorship of their goods.

722. Defendants' propagation of fake consumer reviews to push their counterfeits on customers is a deceptive and unfair business practice.

723. There is a strong public interest in protecting the public from fraudulent consumer reviews, as memorialized in 16 C.F.R. § 465.2. Defendants' conduct injured other persons, had the capacity to injure other persons, and has the capacity to injure other persons within the meaning of RCW 19.86.093(3).

724. There is a strong public interest in protecting companies from having to compete and contend with counterfeits and bootlegs of their own products.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

725. There is also a strong public interest in protecting consumers and secondary retail stores from those same counterfeit products, as it harms the public interest when Defendants deceive downstream consumers and entities as to authenticity, origins, and sponsorship of the products.

726. Defendants' advertising, marketing, offering, distributing, and selling of counterfeit Magic cards directly and proximately causes harm to and tarnishes Wizards' reputation and brands, and damages its business and property interests and rights.

727. Accordingly, Wizards seeks to enjoin further violations of RCW 19.86.020 and recover from Defendants its attorneys' fees and costs under RCW 19.86.090. Wizards further seeks to recover from Defendants its actual damages, trebled, arising from Defendants' sale of counterfeit products, in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

**(False Designation of Origin, Trade Dress Infringement, and False Advertising, 15 U.S.C. § 1125(a))**

728. Wizards repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

729. Wizards owns a valid trademark, trade dress, and commercial identity.

730. Wizards uses this mark, trade dress, and identity in interstate commerce to sell cards, accessories, and other merchandise under the Magic: The Gathering name and associated brands.

731. Defendants use a confusingly similar mark, symbol, and/or false designation of origin to attempt to create counterfeit or "proxy" cards for Magic.

732. Defendants use the Magic Trade Dress, described below, to sell their products.

733. Defendants copy or otherwise attempt to reproduce trademarked symbols and text, such as the name "Magic: The Gathering," the Planeswalker symbol, the holographic foil on cards, as well as copyrighted art and text.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

734. In addition to the registered trademarks identified above, Wizards owns valuable common-law rights in unregistered marks and in the distinctive trade dress of Magic cards themselves ("the Magic Trade Dress").

735. The Magic Trade Dress consists of the following non-functional elements, considered as a whole: (a) the card back, comprising a dark border framing a central beveled panel bearing the stylized "Magic: The Gathering" wordmark above a five-segment color wheel device rendered in black, blue, red, green, and white, set against an ornamented ground; (b) the ornamental appearance of the card face frame, comprising the particular shapes, bevels, textures, and color treatments of a rectangular border of consistent color and dimension; a title bar bearing the card name in the upper left with "mana cost" glyphs in the upper right; a framed art window occupying the upper-middle portion of the card; a type line bearing the card's type; and, at its right terminus, an expansion symbol denoting the set of origin, and, by color, the card's rarity; a text box bearing the rules text, where applicable, italicized flavor text separated by a rule; a power/toughness box at lower right (if the card is a creature-type); and a bottom line bearing artist attribution, collector number, set code, and copyright management information; (c) the distinctive typography, color palettes, and frame treatments Wizards employs to signal each card's color identity; and (d) for select products, the placement and appearance of a holographic authentication stamp along the lower edge of the card face.

736. The Magic Trade Dress is non-functional; none of these elements are essential to the use or purpose of a trading card. Competing trading card games, including the Pokémon Trading Card Game and Disney Lorcana, use different card backs, frame shapes, ornamentation, and typography, which shows that competitors do not need the Magic Trade Dress to make or sell a playable trading card. Wizards does not claim the idea of placing game information in any particular location on a card.

737. The Magic Trade Dress does not affect the cost or quality of a trading card and is not dictated by mechanics of gameplay.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

738. The Magic Trade Dress has acquired secondary meaning; Wizards has used the Magic Trade Dress (in its various formats such as full-art, borderless, and double-sided) continuously and substantially exclusively since 1993; has printed and sold more than twenty billion cards bearing it; has promoted it worldwide through sanctioned organized play, retail partnerships, and advertising; and has enjoyed unsolicited media coverage and industry recognition of it.

739. The Magic Trade Dress identifies Wizards as the only source of Magic goods.

740. Wizards has expended considerable resources policing the Magic Trade Dress, including through authentication and anti-counterfeiting measures described above, because the appearance of the Magic Trade Dress is what the market relies upon to determine the genuine nature of a card and its value.

741. Wizards uses its marks and the Magic Trade Dress in interstate commerce.

742. Defendants have used, and continue to use, in commerce and in connection with goods, words, terms, names, symbols, and devices (and combinations thereof), as well as false designations of origin, that are likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Wizards, and as to the origin, sponsorship, and approval of Defendants' goods by Wizards.

743. Defendants' counterfeit "proxy" cards do not merely evoke the Magic Trade Dress; they reproduce it in its entirety. Each Counterfeit Card bears the genuine card back, the genuine frame architecture, the genuine expansion symbol, the genuine typography, the genuine artwork, and, where applicable, the imitation of the holographic authentication stamp.

744. Defendants further reproduce Wizards' copyright management information and artist attribution on the face of the Counterfeit Cards, so that the Counterfeit Cards affirmatively misrepresent to any person who examines them that they originated with Wizards.

745. Defendants' goods are identical to Wizards' goods.

746. Defendants' marks and trade dress are identical to Wizards' marks and trade dress.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

747. Defendants use those marks and trade dress in the same channels of trade and commerce in which Wizards' cards are sold, traded, and played.

748. Defendants have adopted these marks and trade dress deliberately.

749. Defendants' usage of the marks and trade dress is for the express purpose of producing an article that cannot be distinguished from Wizards' own.

750. The confusion Defendants cause is not confined to, and does not principally occur at, the point of sale.

751. A trading card is an object made to be handled, displayed, shuffled, traded, sleeved, played with, submitted to a judge, and resold (through private sales and common resellers). Its audience is not only the purchaser but every third party who later encounters it.

752. Defendants are aware of the nature and market (as well as secondary markets) for trading cards.

753. The entire value proposition Defendants advertise is that their Counterfeit Cards will withstand examination by someone other than the point-of-sale purchaser.

754. Defendants tout that their cards are meant to mimic original Magic cards.

755. Defendants advertise that they replicate the mana symbols and holographic stamp.

756. Defendants claim that they work hand-in-hand with cardstock suppliers to come as close as possible to the original Magic card.

757. Defendants claim that their double-faced cards play like real game pieces.

758. Accordingly, Defendants' conduct causes, and is intended to cause, confusion among: (a) opponents and other players who see the Counterfeit Cards across the table and in the hands of players using them; (b) tournament officials and organizers, WPN-certified judges, and local game store staff charged with determining whether cards in play are authentic; (c) purchasers on the secondary market, including online marketplaces, consignment stores, and local game store counters, who acquire Counterfeit Cards believing them to be genuine Wizards products; (d) collectors and graders who encounter the Counterfeit Cards in circulation; and (e)



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

members of the consuming public generally, who encounter the Counterfeit Cards without any indication of their true origin in the Defendants' Print Shop.

759. Defendants' own customers acknowledge that the Counterfeit Cards closely mimic the Magic originals and are "100% authentic looking."

760. Defendants compound this confusion by using Wizards' intellectual property.

761. Defendants deploy Wizards' marks, including the Planeswalker symbol, across the Counterfeit Storefronts as site-wide branding, suggesting an affiliation with or authorization by Wizards.

762. Defendants register, operate, and drive traffic to domain names incorporating Wizards' marks and trade dress, including "ProxyMTG.com," "PrintMTG.com," "PrintMTGCards.com," "MTGedh.com" and "BootlegMTG.com," thereby capturing consumers searching for Wizards' goods and diverting them to Defendants' counterfeits. Defendants pair their use of "MTG" with Wizards' Planeswalker symbol as site-wide branding and use it to sell goods that are themselves counterfeit, and the use suggests sponsorship or endorsement by Wizards.

763. Defendants published, as their own place of business, the street address of Heritage Auctions, a reputable auction house that authenticates and sells genuine trading cards, falsely suggesting to consumers a connection between Defendants and a recognized authenticator of the genuine product.

764. None of Defendants' disclaimers cures this confusion.

765. Defendants' "not tournament legal" and "Use Policy" language appears on Defendants' websites and not on the cards themselves, which circulate indefinitely and worldwide with no disclaimer of any kind and with Wizards' marks, trade dress, and copyright notice intact.

766. Defendants have independently made false and misleading descriptions of fact and representations of fact in commercial advertising and promotion.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

767. These false descriptions and representations misrepresent the nature, characteristics, and qualities of Defendants' goods and commercial activities in violation of 15 U.S.C. § 1125(a)(1)(B).

768. As alleged above, Defendants operate a network of websites that hold themselves out as independent, disinterested reviewers of trading-card goods, including Magic proxy and counterfeit cards.

769. These websites are in fact owned, operated, and written by Defendants.

770. These websites published purported reviews, rankings, and head-to-head comparisons of vendors of counterfeit Magic cards, which invariably rank Defendants' owned and operated storefronts at or near the top.

771. Those websites publish express editorial and disclosure policies representing that any ownership, employment, financial, or familial relationship between the reviewer and the reviewed websites will be disclosed.

772. That representation is false.

773. No such disclosures are ever made.

774. Those reviews are attributed to persons who do not actually exist, such as "Kit Yarrow," a fabricated persona built upon the name and professional reputation of a real person; and "John Monsen," who, on information and belief, is an alias of Defendant Ryan Dunn.

775. Those representations are false and likely to deceive the public or a substantial segment of the public to whom they are directed.

776. Those representations are material as consumers rely upon independent reviews and comparison content in deciding where to make their purchases.

777. These false reviews injure Wizards directly. By presenting the Counterfeit Storefronts as independently vetted, lawful, high-quality sources of "realistic" Magic cards, the reviews induce consumers to buy Counterfeit Cards instead of genuine Wizards product. That diverts sales from Wizards and damages the reputation of the genuine product.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

778. Defendants' entire promotional architecture exists because Defendants cannot lawfully advertise counterfeit goods through conventional channels.

779. Defendants disseminated these representations in interstate commerce, through websites, social media accounts, press releases, and search-engine-optimized promotional content directed at consumers nationwide, including within the Western District of Washington.

780. Defendants knew these representations were false at the time they were made.

781. Defendants deliberately infringed on Wizards' marks and trade dress.

782. Defendants' infringement is not inadvertent or accidental.

783. The breadth and scope of Defendants' operation, including other marks and trade dress upon which they infringe that are not owned by Wizards, shows that their conduct is knowing and intentional.

784. Wizards is injured by Defendants' actions.

785. Wizards' injuries are within the zone of interests protected by the Lanham Act.

786. Wizards' injuries were proximately caused by Defendants' violations of the Lanham Act.

787. Wizards has suffered and will continue to suffer injury to its sales, its commercial reputation, and its business flowing directly from Defendants' conduct as described above.

788. Defendants' conduct has deprived, and will continue to deprive, Wizards of its ability to control the nature and quality of the goods offered under its marks and trade dress, and the goodwill associated therewith.

789. Defendants' conduct was and is willful, deliberate, and undertaken in bad faith and with full knowledge of Wizards' rights.

790. This case is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

791. As a direct and proximate result of Defendants' conduct, Wizards is entitled to recover actual damages, Defendants' profits, and the costs of this action, together with enhanced damages and reasonable and necessary attorneys' fees and costs and expenses pursuant to 15 U.S.C. § 1117(a).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

792. Wizards has no other adequate remedy at law; the marks and trade dress are unique and valuable property. Wizards' reputation and goodwill cannot be made whole by a monetary award alone; each additional counterfeit product Defendants place into the stream of commerce compounds the harm and persists indefinitely. Defendants' conduct is continuing, and, absent the injunctive relief prayed for herein and in appropriate other pleadings filed with this Court, will continue unabated.

793. Wizards is therefore entitled to preliminary and permanent injunctive relief under 15 U.S.C. § 1116, including, but not limited to, an order of seizure, impoundment, and destruction under 15 U.S.C. § 1118.

794. Wizards is entitled to general relief and such other monetary and injunctive relief as is available under the applicable laws and rules governing this Court, and hereby makes request for the same.

**SEVENTH CAUSE OF ACTION**

**(Violations of 17 U.S.C. § 1202)**

795. Wizards repeats and realleges the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

796. Counterfeit cards, via Defendants' customization web interface, were routinely published with attribution, credit, and other copyright management information falsely conveying that the counterfeit copies were published, authorized, or licensed by Wizards.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

797. Defendants' customization web interface included a text input box that allowed purchasers the option of including Wizards' copyright information on Defendants' Counterfeit Cards.




798. Defendants added, and still add, false copyright management information to these Counterfeit Cards before distributing and publishing them to the public, including when the purchaser leaves the "Artist" and "Legal Text" fields blank.

799. This false copyright management information is on Counterfeit Cards they print to this day.

800. This allowed Defendants to sell cards that displayed this false copyright information.

801. Cards ordered from PrintMTG.com and PrintACube.com depict fraudulent copyright registration information.

802. This constitutes "copyright management information" as that phrase is defined in 17 U.S.C. § 1202(c), and that information on the Counterfeit Cards is false. The copyright notice and artist credit are false as they appear on Defendants' cards because, in that context, they represent that the card was published by Wizards or under its authority.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

803. Defendants did so knowingly and with the intent to induce, enable, facilitate, or conceal infringement, including by causing a tournament judge, purchaser, or other possessor of the card to believe that it is legitimate and printed by Wizards, when it is not.

804. When Defendants distributed the Counterfeit Cards, they knowingly provided and/or distributed false copyright management information in violation of 17 U.S.C. § 1202(a). As a result of the foregoing, Wizards has been damaged and may recover those damages as well as Defendants' ill-gained profits, and/or statutory damages, and attorneys' fees under 17 U.S.C. § 1203.

**EIGHTH CAUSE OF ACTION**

**(Civil Conspiracy)**

805. Wizards repeats and realleges the allegations of all preceding paragraphs of this Complaint as if fully set forth herein.

806. The PrintMTG Enterprise is a group of individuals and entities that make and sell counterfeit goods into Washington and throughout the United States.

807. Defendants agreed to act together in connection with the unlawful and tortious conduct described above, including the unfair and deceptive acts and practices in violation of RCW 19.86.020 described in the Fifth Cause of Action.

808. Upon information and belief, Defendants are aware of the wrongfulness of their conduct.

809. Although not all members of the conspiracy have taken the same actions, all members of the conspiracy have agreed to share in the profits of the wrongful actions.

810. All members of the conspiracy are thus equally liable for the conduct of all other members.

811. To the extent that Wizards has been harmed by the actions of one member of the conspiracy, all members of the conspiracy are equally liable to Wizards for those damages.

812. This conspiracy directly harmed Wizards through lost business, an injured reputation, and the significant expense of its anti-counterfeiting measures.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

813. As a result of the foregoing, Wizards is entitled to an award of damages in an amount to be proven at trial, in joint and several liability, against all members of the conspiracy.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues so triable in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Wizards of the Coast LLC prays for the following relief:

A. That judgment be entered in Wizards' favor against Defendants on all applicable claims;

B. That Defendants and their officers, agents, representatives, servants, employees, heirs, successors, assigns, and all other requisite participants in Defendants' Enterprise be preliminarily and permanently enjoined from:

(1) Infringing, inducing, or enabling others to infringe Wizards' copyrights;

(2) Selling counterfeit products or infringing products;

(3) Importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product or service using any simulation, reproduction, counterfeit, copy, or colorable imitation of the brands of Wizards of the Coast LLC, Magic: The Gathering, or any other Wizards of the Coast LLC property, or which otherwise infringes upon Wizards' intellectual property in any store or in any medium; and

(4) Aiding or assisting another person or entity in any of the activities described in (1) - (3).

C. That the Court enter an order pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503 impounding and permitting destruction of all counterfeit and infringing products bearing the Wizards Trademarks or that otherwise infringe Wizards' intellectual property, and authorizing the seizure of any related materials, including business records and materials used to reproduce any infringing products, in Defendants' possession or under their control;

D. That the Court enter an order forbidding Defendants from manufacturing or



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

selling counterfeit products bearing the Wizards Trademarks, including counterfeits of Magic products released after entry of judgment;

E. That the Court enter an order requiring Defendants to provide Wizards with a full and complete accounting of all amounts due and owing to Wizards as a result of Defendants' unlawful activities;

F. That the Court enter an order requiring Defendants to pay all general, special, and actual damages which Wizards has sustained, or will sustain as a consequence of Defendants' unlawful acts, plus each Defendant's profits from the unlawful conduct described herein, or, at Wizards' election, statutory damages under 15 U.S.C. § 1117(c), 17 U.S.C. § 504(c), and 17 U.S.C. § 1203(c), and that such damages be enhanced or trebled as provided for by 15 U.S.C. § 1117(b), RCW 19.86.090, 18 U.S.C. § 1964(c), or as otherwise allowed by law;

G. That Wizards be awarded pre-judgment and post-judgment interest on all damages awarded against Defendants;

H. That the Court enter an order requiring Defendants to pay the costs of this action and Wizards' reasonable attorneys' fees incurred in prosecuting this action, as provided for by 15 U.S.C. § 1117, 17 U.S.C. §§ 505 and 1203(b), RCW 19.86.090, 18 U.S.C. § 1964(c), or as otherwise allowed by law;

I. That the Court enter an order that identifies and requires financial institutions to transfer to Wizards all amounts arising from Defendants' unlawful counterfeiting activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case; and

J. That the Court award such other relief as the Court deems just and proper.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Dated this 23rd day of November, 2026.

Respectfully submitted,

KAMERMAN, UNCYK, SONIKER & KLEIN, P.C.

By: *s/ James Barker*
James Barker WSBA #47985 (application for admission forthcoming)

By: *s/ Lane Haygood*
Lane Haygood WSBA #59723 (application for admission forthcoming)

Dylan M. Schmeyer (pending *pro hac vice*)
Akiva M. Cohen (pending *pro hac vice*)
Thomas Neville (pending *pro hac vice*)
Thom Prince (pending *pro hac vice*)

1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
jbarker@kusklaw.com
lhaygood@kusklaw.com
dschmeyer@kusklaw.com
acohen@kusklaw.com
tneville@kusklaw.com
tprince@kusklaw.com

DAVIS WRIGHT TREMAINE LLP

By: *s/ Lauren Rainwater*
Lauren Rainwater, WSBA #43625

By: *s/ Eric M. Stahl*
Eric M. Stahl, WSBA #27619

920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: 206.622.3150
laurenrainwater@dwt.com
ericstahl@dwt.com

*Attorneys for Plaintiff Wizards of the Coast LLC*

## APPENDIX A

## DEFENDANTS NAMED IN THE CAPTION BY REFERENCE

In addition to Defendant Ryan James Dunn and John Does No. 01-15, the caption of this Complaint names the following Defendants, each of whom is identified in Section I.B above.

Individual Defendants: Melissa Jayne Dunn; Tanner Dunn; Jarrett Dunn; Grace Haroldsen Dunn; Parker Haroldsen; Ethan Thomas Dunn; Raili Dunn Lewis; Kosner Lewis; Kazdin Lewis; Colin Pratt Dunn; Christopher Dunn; Maren Loflin Dunn; Joseph Michael Dunn; Michael Cresswell Monsen; Daniel Monsen; Keltsie Rencher; Karen Cresswell Monsen; John Doe #01 a/k/a “John Monsen”; Cody Chamberlain; Perry Doe #02; Daxton Matthew Macey; Zoe Doe #03; Brynna Higginson; Alie Mueller; Garrett Lyon; Maxwell Mangum; Kosuke Doe #04; Elle Porter; Kenzi Fish; Rob Doe #05; Jessica Doe #06; Jacqueline Doe #07; Adam Weinert; Rylan Doe #08; Sita Doe #09; Joseph Doe #10; Anthony Johnson; Arletta Esqueda; Amber Doe #11; Braxton Batty; C. Dennis Allen; Brandon Doe #12; Charlee Galbraith; Katelyn Smith; Andy Doe #13; Cultural-Row23; Tom Doe #14; and Kit Doe #15.

Entity Defendants: CK Brands LLC; CK Cards LLC; JR Cards LLC; Proxy Paradise LLC; Cardcrafters Proxy LLC; MTG APP, LLC; Black Walnut Properties LLC; and Shelikof Capital LLC.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax